**Gail B. WILLIAMS, Plaintiff,**

v.

**CHICAGO BOARD OF EDUCATION, Steve Newton, Jr., Principal and individually, Quinella Miller, Chair Department of Guidance and Marshall Metro High School and individually, Defendants.**

**No. 97 C 1063.**

United States District Court, N.D. Illinois, Eastern Division.

Nov. 20, 1997.

Paul Anthony Brady, Paul A. Brady & Associates, LaQuida Glover, Law Office of LaQuida Glover, Chicago, IL, for Plaintiff.

Marilyn Johnson, James Seaberry, Board of Education, City of Chicago, Chicago, IL, for Chicago Board of Education.

Ronald S. Samuels & Associates, Chicago, IL, for Steve Newton, Jr.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

Gail B. Williams ("Williams") sues the Chicago Board of Education ("the Board"),[1] Steve Newton, Jr. and Quinella Miller for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. The claims arise from Williams' employment as a guidance counselor at Marshall Metro High School. The Board moves to bar Williams' evidence pursuant to Fed.R.Civ.P. 37.

### BACKGROUND

The discovery deadline—December 10, 1997—is fast approaching. On October 29, 1997, this court ordered Williams to produce long overdue written discovery by October 31 and to appear for her deposition by November 10. Williams *mailed* answers to the Board's interrogatories on October 31, but many of those answers are plainly non-responsive. Moreover, Williams did not produce a single document in response to the Board's production request until November 4. The Board moves to bar Williams' evidence because of her failure to comply with the court's October 29 order. The Board asserts it has been prejudiced in preparing its case. Williams responds that an order barring her evidence would be unjust because (1) the Board is equally culpable of dilatory tactics and discovery violations, and (2) the Board would be rewarded for ignoring Local Rule 12(K) and for being the first to file a motion to compel. The following is a brief history of the problems generated by irresponsible discovery tactics and lack of professional courtesy by counsel for both sides.

On August 5, 1997, the Board served its production request and first set of interrogatories on one of Williams' attorneys, LaOuida Glover ("Glover"). Thirty days passed. Counsel for the Board, James J. Seaberry ("Seaberry"), called Glover on September 4 to ask when Williams would comply with the Board's written discovery requests. Glover claimed she never received the Board's requests; Seaberry had a second set of discovery requests hand-delivered to Glover on September 4.

Williams' deposition was originally noticed for September 24. As the deposition approached, Williams had still not responded to the Board's written discovery. Thus, Williams' deposition was re-noticed for October 14. Seaberry spoke with Glover on October 8, to request yet again that the Board's written discovery be answered. Glover allegedly responded she was interested in settling the case without responding to discovery. On October 14, someone advised Seaberry at 10:10 a.m. that Williams would not be produced for her 10:00 a.m. deposition. Two telephone calls earlier that morning from Seaberry to Glover went unanswered, and no excuse has yet been given for Williams' failure to appear on that date.

On October 17, Seaberry was contacted by Paul A. Brady, Glover's co-counsel. Although Brady filed an appearance and although his name and his firm's address and telephone number appear on all pleadings filed on behalf of Williams, Brady had not received copies of any pleadings filed by the Board in this matter. Brady insisted on receiving copies of all past and future discovery pleadings, including deposition notices. Further, Seaberry was advised that Brady was "taking the lead in all discovery issues," and that Brady would try to respond to the Board's outstanding discovery requests by October 31.

Meanwhile, more than thirty days had passed since Brady propounded a discovery request on behalf of Williams on September 10; the Board failed to timely respond. On October 27, Brady sent a letter to Seaberry requesting compliance with Williams' discovery request.

On October 29, Seaberry—having again provided notice to Glover but not to Brady—appeared before this court and moved to compel Williams' response to the Board's outstanding discovery requests by October 31 and to compel Williams' appearance for her deposition by November 10. Glover indicated that her co-counsel Brady had already agreed to those dates and therefore an

---

1. Amendments to the Illinois School Code established the Chicago School Reform Board of Trustees in place of the Chicago Board of Education. *See* 105 ILCS 5/34–1 et seq.

order was unnecessary. However, the court granted the Board's motion to avoid any misunderstanding and warned Glover that "consequences will flow under Rule 37 of the Federal Rules of Civil Procedure if the plaintiff does not comply." 10/29/97 Transcript at p. 5.

On October 31, Brady mailed Williams' "responses" to the Board's interrogatories. By and large, Williams ignored the Board's requests; Williams failed to identify witnesses and treating physicians and failed to specify her damages or method of computing damages. For example, the Board's interrogatory no. 3 asked specific information regarding witnesses or documents supporting Williams' allegations. Williams responded: "The investigation is ongoing." Williams' response to many of the Board's other interrogatories was simply, "see production request response." However, Brady did not mail the documents produced by Williams until November 4—in clear violation of this court's October 29 order. Williams fails to explain why these documents were not produced by October 31.

Also on November 4, Brady sent Seaberry a second letter seeking compliance with Williams' outstanding discovery requests. Brady advised Seaberry that the earlier forwarded responses to the Board's interrogatories were being supplemented. On November 6, Seaberry's secretary advised Brady that the Board would not be producing Quinella Martin for her deposition on November 7.

On November 7, the Board filed a motion to bar Williams' evidence based on her failure to comply with this court's October 29 order. At the time Seaberry filed the Board's motion to bar evidence, the Board had not received a single document from Williams since the filing of her suit. The arrival of Williams' untimely produced documents failed to ameliorate the prejudice suffered by the Board; the only documents Williams produced relating to her alleged chronic sinusitis merely list the condition as one of her medical problems. Williams provides no evidence of her allegedly long-term medical treatment for chronic sinusitis. Nor does Williams provide any evidence of lost income, medical bills, or any other documentation of her damages. To date, not a single witness supporting Williams' case has been identified in response to the Board's interrogatories or to its production request.

On November 10, Brady advised Seaberry that Williams' deposition would have to be delayed until November 12 or 13, because Brady "had caught a bad cold over the weekend and had lost his voice." Brady offered no explanation as to why co-counsel Glover could not defend the deposition. Brady and Seaberry discussed rescheduling Williams' deposition. During that conversation, Seaberry announced the Board was not going to produce its two employees for their November 11 and 12 depositions. Seaberry also informed Brady that the Board had filed a motion (noticed for November 12) to bar Williams' evidence, because it did not believe Williams' answers to the interrogatories were responsive.

Brady received notice of the Board's motion on November 10. Brady arrived at court the morning of the 12th, because Seaberry failed to notify Brady that the motion date had been changed to November 13. Brady came to court again on the morning of the 13th, because Seaberry failed to notify Brady that counsel did not need to appear. The gist of Williams' response seems to be that Seaberry has wilfully ignored Brady and has never cooperated in Brady's attempts to resolve these problems out of court.

## DISCUSSION

### I. FRCP 37

Federal Rule of Civil Procedure 37(b) authorizes sanctions for failure to comply with discovery orders. If a party fails to obey an order to provide or permit discovery, the court may enter an order that is just under the circumstances. Among the court's alternatives are: (i) refusing to allow the disobedient party to support or oppose designated claims, (ii) striking pleadings or staying proceedings until the order is obeyed, or (iii) rendering a judgment by default. Fed. R.Civ.P. 37(b)(2). "Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant

such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Roadway Exp., Inc. v. Piper,* 447 U.S. 752, 763–64, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (quoting *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976)).

■ Generally, sanctions may be imposed where a party fails to comply with a discovery order and displays willfulness, bad faith or fault. *See Philips Medical Systems Intern., B.V. v. Bruetman,* 982 F.2d 211, 214 (7th Cir.1992); *see also Crown Life Ins. Co. v. Craig,* 995 F.2d 1376, 1382 (7th Cir.1993) ("if not willfulness and bad faith, at least 'contumacious conduct' 'dilatory tactics,' or the failure of less drastic sanctions"). *But see Newman v. Metropolitan Pier & Exposition Authority,* 962 F.2d 589, 591 (7th Cir. 1992) ("The cases in this circuit, at any rate, do not set up a row of artificial hoops labeled 'bad faith' and 'egregious conduct' and 'no less severe alternative' through which a judge must jump....").

## II. BAD FAITH AND PREJUDICE

Williams asserts the Board fails to make a "showing of a willful violation of the court's discovery order ... or prejudice to the Board." Williams insists the record demonstrates "a good faith effort by the plaintiff to respond to the [Board's] discovery requests...." Williams' assertions of good faith and lack of prejudice are belied by the record. The October 29 order compelling Williams' discovery responses and compelling her appearance for a deposition was necessitated by Williams' dilatory tactics and contumacious conduct—including her failure to produce a single document in response to the Board's August 5 requests and her failure to notify the Board that she would not appear for her October 14 deposition. Williams has yet to offer an explanation for this conduct.

Without delving into whether Brady's "bad cold" justified delaying Williams' deposition for yet a third time, it is sufficient to note Williams failed to comply with this court's clear and unambiguous order to produce her long overdue discovery responses by October 31. In a startling lack of profes-

sional courtesy, on October 31 Williams *mailed* her responses to the Board's interrogatories. In clear violation of this court's order (and after months of discovery), Williams did not produce a single document on October 31. Moreover, Williams failed to provide good faith answers to the Boards' interrogatories. For example, the Board requested information about witnesses and documents supporting Williams' allegations; Williams responded, "The investigation is ongoing." With discovery drawing to a close and Williams' deposition yet to be taken, the response "the investigation is ongoing" was clearly made in bad faith. Surely Williams cannot credibly argue that as of October 31 she did not know a single witness or document that supported her claim.

Williams' assertion that the Board has failed to demonstrate prejudice is equally contrary to the record. Even considering the documents produced by Williams after October 31, Williams has yet to produce any substantive information or documentation regarding her alleged injuries and damages, her medical treatment (other than a list of her conditions), and other matters important to the Board's preparation of its defense. Williams responds, "[w]hen a more detailed picture of the damages is available, it will be forwarded," and "[t]he investigation is ongoing." Williams allegedly suffered damages in 1994 and 1995; her lack of *any* information, at this late stage, reflects her failure to take seriously her obligations with respect to this litigation. As a result of Williams' failure to prepare her own case, the Board has been prejudiced in its ability to prepare a defense to Williams' claims. It will not do to suggest that no prejudice exists merely because neither side has the information yet. Williams ignores "the responsibility of district judges for the management of their busy calendars [and] the burden on defendants and their lawyers of having their schedules disrupted by plaintiffs who do not play by the rules." *Newman,* 962 F.2d at 591.

## III. WILLIAMS' ARGUMENTS

Williams argues an order barring her evidence would be "draconian," as similar relief is reserved for occasions where a party diso-

beys a court order and displays willfulness, bad faith, or fault. Williams urges those factors cannot be established in this case; for the reasons previously discussed, Williams' argument is belied by the record.

■ Williams contends "the fact that [co-counsel Brady] does not have the requested information [cannot] be the basis for sanctions." For this proposition, Williams cites *Adkins v. Mid–America Growers, Inc.*, 141 F.R.D. 466 (N.D.Ill.1992). Adkins represented a plaintiff class of rural greenhouse workers, most of whom were uneducated and many of whom were illiterate; the class members changed residences frequently and were difficult to locate. Plaintiffs' counsel answered an interrogatory by stating "[i]nvestigation continues"; the court found this response did not warrant sanctions under Rule 37. In so holding, the court emphasized the circumstances of the case:

> Adkins' counsel represents a large group of people who are often very difficult to locate. It is even more difficult to communicate with these people and convey what is requested.... Despite these difficulties, counsel did directly or indirectly ask each known individual plaintiff at a group meeting if they had any documents that conformed with the request which he read aloud. No one responded that they had any of the documents requested and counsel asked those present to tell others of the request and to call if those persons had anything in response. *Given the circumstances, this was appropriate and sanctions were not warranted.*

*Id.* at 468—69 (emphasis added). Williams completely neglects the context in *Adkins*. Williams' counsel did not face the inherent difficulties in communicating with a large and partially illiterate class who were difficult to locate. Rather, Williams' counsel had a single client and a case that was relatively simple to prepare. Given these circumstances, Williams' failure to provide responsive answers at this late stage of discovery was inappropriate and sanctions are plainly warranted.

■ Williams responds an order barring her evidence would be unjust because the Board is equally culpable of dilatory tactics and discovery violations. Williams has never filed a motion to compel, and the issue of the Board's compliance with Williams' discovery requests is not before this court. More importantly, any dilatory tactics on the part of the Board do not absolve Williams of her failure to comply with this court's October 29 order. Williams asserts that where parties are equally culpable for petty discovery disputes, neither party should be sanctioned. For this proposition, Williams cites *Pasant v. Jackson Nat. Life Ins. Co. of America*, 137 F.R.D. 255, 259 (N.D.Ill.1991).

As an initial matter, the court declines to find that Williams and the Board are "equally culpable" for this discovery dispute. *Pasant* gives no indication that only one of the parties ignored a court order (it is unclear whether they both did or whether neither did). Regardless, the fact that Williams is the party who willfully violated this court's October 29 order makes it difficult to find the Board "equally culpable" on this record. Moreover, Williams once again ignores the factual setting of the case she cites. In *Pasant*, the court declined to bar evidence because "[t]he parties [had] an unlimited period of time for discovery, with no trial date in sight." *Id.* Williams and the Board do *not* have an unlimited period of time for discovery. Pursuant to a long-standing scheduling order, discovery will close and dispositive motions will be filed by December 10, 1997. Williams' draft pretrial order is to be submitted to defendants in less than one month, and this case is on the January trial calendar. *Pasant* is simply inapposite.

Although the Board has not violated a court order, the court notes the Board appears to have been less than prompt in fulfilling its own discovery obligations. One message that both parties should not take from this opinion is that they may rely on each other's irresponsible behavior to justify further contumacious conduct and dilatory tactics, resting comfortably on the (mistaken) belief no sanctions will be imposed and the discovery deadline will be extended. *Let there be no mistake:* further dilatory tactics or bad faith responses on the part of *either* party will result in further sanctions under Rule 37.

The court recognizes that potential future sanctions against the Board may bring little solace for Williams if her evidence is barred, as Williams bears the burden of proof. However, Williams was fully aware of the potential consequences of failing to comply with this court's October 29 order. Indeed, the Board's motion to compel sought (in the alternative) a barring of Williams' evidence. When this court granted the Board's motion to compel, it warned that "consequences will flow under Rule 37 of the Federal Rules of Civil Procedure if the plaintiff does not comply." 10/29/97 Transcript at p. 5. Williams offers absolutely no explanation for failing to produce a single document on October 31. Examining the documents that were eventually produced, no explanation is possible; these documents could easily have been assembled in time to comply with the court's order. Considering Williams' bad faith in not producing them, and the resulting prejudice suffered by the Board in preparing its defense, an order barring William's evidence is appropriate.

Instead of explaining why she flouted this court's order, Williams emphasizes she eventually produced documents on November 4. Williams suggests this evidence should not be barred, stating she finds "instructive" *Mr. Frank, Inc. v. Waste Management, Inc.*, 591 F.Supp. 859, 864 (N.D.Ill. 1984). The court is mindful of the rule that a court should tailor its choice of sanction to the severity of the misconduct. That is precisely why this court does not find *Mr. Frank* instructive. In *Mr. Frank*, the court declined to sanction Waste Management for producing written discovery responses a few days late. Significantly, Waste Management did not violate a court order. Williams did. This court unambiguously ordered Williams to produce her long overdue discovery responses by October 31. She made no good faith effort to do so. Therefore, unlike Waste Management's tardiness, Williams' misconduct is sufficiently serious to justify an order barring all Williams' evidence not turned over by October 31, 1997.

Finally, Williams argues an order barring her evidence would reward the Board for ignoring Local Rule 12(K). Rule 12(K) requires parties to make a good faith effort to resolve discovery disputes without judicial intervention. The Board clearly articulated the problems it encountered with Williams and her failure to attend depositions. "[I]t would be incongruous to require [the Board] to provide more detail in their motion ... given that ... [Williams] had just violated a direct order by the district court." *Halas v. Consumer Servs. Inc.*, 16 F.3d 161, 165—66 (7th Cir.1994). Williams appears to seek shelter from the discovery rules through her use of co-counsel, suggesting the Board violated Rule 12(K) by not negotiating with Brady. The local rules do not require counsel to attempt negotiations with each and every lawyer on the opposing side, in the hope that one might be reasonable. The Board sought compliance from Williams' counsel. When those efforts failed, the Board moved to compel Williams' long overdue discovery responses. The court ordered compliance, and Williams violated that order without justification or explanation. Local Rule 12(K) does not require the Board to beg Williams to comply with clear and unambiguous court orders before seeking sanctions. Accordingly, Williams' argument is without merit.

## CONCLUSION

The defendant Board's motion to bar plaintiff's evidence is granted. Any evidence the plaintiff failed to produce by October 31, 1997 is barred.