614 S.E.2d 1

**CATTRELL COMPANIES, INC.,**
Plaintiff Below, Appellee,

v.

**CARLTON, INC.,** a West Virginia corporation; Charles V. Maescher & Company, a foreign corporation; BBL–Carlton, L.L.C., a West Virginia limited liability company; Maescher Industries, Inc., a foreign corporation; Barry Bette & Led Duke, Inc., a foreign corporation; BBL–Central, L.L.C., a limited liability company; Donald Led Duke; Carl F. Agsten; Robert Compton; Grant V. Hesser; John Doe; and Douglas W. Barker, Defendants Below,

**BARRY BETTE & LED DUKE, INC.,** a foreign corporation, and Grant V. Hesser, Defendants Below, Appellants.

No. 31730.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 11, 2005.

Decided May 10, 2005.

Charles L. Woody, Clifford F. Kinney, Jr., Robert Patrick Paulson, Spilman Thomas & Battle, PLLC, Charleston, West Virginia, Attorneys for the Appellants.

Vincent Trivelli, Morgantown, West Virginia, Attorney for Amicus Curiae, Affiliated Construction Trades Foundation.

Roger D. Williams, Barrett Chafin Lowry Amos & McHugh, Charleston, West Virginia, Attorney for Amicus Curiae, The West Virginia Laborers' District Council and The International Union of Operating Engineers Local 132.

Marc. B. Chernenko, William E. Watson, William E. Watson & Associates, Wellsburg, West Virginia, Attorneys for the Appellee.

William L. Casto, Charleston, West Virginia, Pro se for Amicus Curiae, Ironworkers No. 301.

DAVIS, Justice:

This is an appeal by Barry, Bette & Led Duke, Inc. (hereinafter referred to as "Duke") and Grant V. Hesser (hereinafter referred to as "Mr. Hesser"), appellants/defendants below, from an order of the Circuit Court of Tyler County granting judgment to Cattrell Companies, Inc. (hereinafter re-

ferred to as "Cattrell"), appellee/plaintiff below. The judgment against Duke and Mr. Hesser was imposed under Rules 37(b) and (d) of the West Virginia Rules of Civil Procedure as a sanction for discovery violations.[1] In this appeal, Duke and Mr. Hesser argue that the sanction was improper and unduly harsh. Upon review of the parties' arguments,[2] the pertinent authorities, and the record designated for appellate consideration, we affirm in part, reverse in part, and remand for further proceedings.

# I.

## FACTUAL AND PROCEDURAL HISTORY

This case has its origins in a prior action brought by Cattrell against other defendants.[3] The prior case was a breach of contract action in which Cattrell sought to recover damages for work it performed on a construction project.[4] Cattrell prevailed in the action and was awarded a judgment in the amount of $1,798,706.00. Part of the judgment was satisfied by one of the co-defendants. In order to collect the balance, approximately $562,647.84, Cattrell instituted the present action against Duke and Mr. Hesser, and several other defendants.[5]

The complaint in the instant action alleged essentially that Duke and Mr. Hesser assisted defendants in the prior case in carrying out a scheme to fraudulently transfer assets and property to avoid payment of the judgment rendered in that action. Duke and Mr. Hesser, who were represented by the same counsel, filed a joint answer to the complaint.[6] During the discovery phase of the proceeding Cattrell served interrogatories and requests for production of documents upon Duke and Mr. Hesser on November 1, 1999.[7] Duke and Mr. Hesser failed to respond to the discovery requests. Consequently, on December 15, 1999, Cattrell filed a motion to compel.[8] A hearing was held on the motion on January 6, 2000. Subsequent to the hearing, but prior to the entry of a court order on the motion to compel, Duke and Mr. Hesser provided responses to the discovery requests. Thereafter, on February 8, 2000, the circuit court entered an order directing Duke and Mr. Hesser to respond fully to the discovery requests within twenty days and to pay attorney's fees incurred by Cattrell in bringing the motion.[9]

On May 3, 2000, Cattrell filed a motion pursuant to Rule 37(b), seeking sanctions against Duke and Mr. Hesser for allegedly failing to fully respond to the discovery re-

1. The sanction included striking defenses, entering default judgment and awarding damages.

2. We wish to acknowledge the contribution of the following amici curiae who filed briefs in this case: Affiliated Construction Trades Foundation, Ironworkers No. 301, the West Virginia Laborers' District Council, and the International Union of Operating Engineers Local 132. All amici filed motions and/or briefs in support of Duke and Mr. Hesser's position. We value their participation in this case and will consider their briefs in conjunction with the parties' arguments.

3. The prior action was filed in the Circuit Court of Tyler County and styled Cattrell Companies, Inc., v. Carlton/Maescher, Joint Venture; Charles V. Maescher & Co., Inc.; Carlton, Inc.; and Insurance Company of North America, Civil Action Number 93–C–62–K.

4. Cattrell performs mechanical and electrical contracting services.

5. The additional defendants were BBL–West Virginia, L.L.C.; BBL–Carlton, L.L.C., Maescher Construction, Inc.; Maescher Industries, Inc.; Matrix Building Company; BBL–Central, L.L.C.;

Donald Led Duke; Carl F. Agsten; Robert Compton; John Doe; Douglas W. Barker. The other defendants are not part of the present appeal.

6. Additionally, Maescher Industries, Inc., BBL–Central, L.L.C., and BBL–Carlton, L.L.C. joined in the answer and were represented by the same counsel.

7. We note that the interrogatories and requests for production of documents were addressed to all of the underlying defendants, collectively; however, we discuss the discovery dispute only as it relates to Duke and Mr. Hesser.

8. The motion actually was titled "Plaintiff's Motion for Discovery Sanctions;" however, it was treated by the circuit court as a motion to compel.

9. Since Duke and Mr. Hesser had already filed their discovery responses, they paid the attorney's fees to fully comply with the circuit court's order.

quests.[10] The motion sought to have Duke and Mr. Hesser's defenses struck and default judgment rendered against them. The circuit court took the motion under advisement and did not immediately rule upon the matter.

On March 29, 2001 and June 20, 2001, Cattrell wrote to Duke and Mr. Hesser and requested deposition dates for Mr. Hesser and a representative of Duke. Duke and Mr. Hesser did not respond to either letter. Consequently, on July 6, 2001, Cattrell noticed the depositions to take place on July 19, 2001. Subsequently, on July 18, 2001, counsel for Duke and Mr. Hesser telephoned Cattrell to advise that the depositions needed to be rescheduled because the deponents were not available. Alternative deposition dates were offered by Duke and Mr. Hesser, but Cattrell refused to cooperate in rescheduling the depositions. Instead, Cattrell filed another motion for sanctions, this time under Rule 37(d) for failure to attend depositions. In the second motion for sanctions, Cattrell again sought to have Duke and Mr. Hesser's defenses struck and default judgment rendered against them.

A hearing was held on the second motion for sanctions on August 9, 2001.[11] At the conclusion of the hearing, the circuit court granted Cattrell's previous motion for discovery sanctions under Rule 37(b), based on a failure to comply with the court's order of February 8, 2000, and granted Cattrell's motion under Rule 37(d), based on a failure to appear at a deposition. By order rendered October 1, 2003, the circuit court struck Duke and Mr. Hesser's defenses and entered default judgment against them under both

Rule 37(b) and Rule 37(d). The order also awarded $562,647.83 in damages, and prejudgment interest in the amount of $226,292.32.[12] This appeal followed.[13]

## II.

### STANDARD OF REVIEW

The case presented to this Court requires an analysis of the trial court's imposition of discovery sanctions under Rules 37(b) and (d). With respect to Rule 37(b), we have held that

> [t]he imposition of sanctions by a circuit court under *W. Va. R. Civ. P.* 37(b) for the failure of a party to obey the court's order to provide or permit discovery is within the sound discretion of the court and will not be disturbed upon appeal unless there has been an abuse of that discretion.

Syl. pt. 1, *Bell v. Inland Mut. Ins. Co.*, 175 W.Va. 165, 332 S.E.2d 127 (1985). Likewise, we now specifically hold that the imposition of sanctions by a circuit court under Rule 37(d) of the West Virginia Rules of Civil Procedure is within the discretion of the trial court and will not be disturbed absent an abuse of discretion. *See, e.g., Aziz v. Wright*, 34 F.3d 587 (8th Cir.1994) (applying abuse of discretion standard in reviewing Rule 37(d) of the Federal Rules of Civil Procedure).

Our resolution of this case also requires an independent analysis of Rule 37(d) to determine what constitutes a "failure to appear" within the meaning of the rule. In cases where we are called upon to analyze and interpret a rule, we are guided by the proposition that "[a]n interpretation of the

**10.** It appears that Duke and Mr. Hesser supplemented their previously-filed discovery responses on May 4, 2000, and again on May 5, 2000.

**11.** During that hearing it was learned that Duke and Mr. Hesser's West Virginia counsel contacted New York counsel and informed him of the request for depositions. No response was received from New York counsel about the matter until the day after the depositions were scheduled to be held. On that date, Duke and Mr. Hesser's West Virginia counsel learned that New York counsel had been unavailable because he was involved in a trial for five weeks. It was further learned that Mr. Hesser was not aware that an attempt had been made to schedule his

deposition until after the scheduled date for the deposition had passed.

**12.** Additionally, the order awarded post-judgment interest, punitive damages, and attorney's fees in amounts to be later determined.

**13.** Duke and Mr. Hesser filed a motion for reconsideration in the circuit court on October 30, 2003. Following a hearing on the motion for reconsideration, the circuit court requested proposed findings, which were provided. However, the circuit court has yet to rule on the motion for reconsideration. Nevertheless, our independent review leads us to conclude that the issues raised herein are ripe for this Court's consideration.

*West Virginia Rules of Civil Procedure* presents a question of law subject to a *de novo* review." Syl. pt. 4, *Keesecker v. Bird*, 200 W.Va. 667, 490 S.E.2d 754 (1997). Mindful of these applicable standards, we now consider the substantive issues herein raised.

## III.

## DISCUSSION

This appeal requires us to determine whether the trial court abused its discretion in rendering judgment against Duke and Mr. Hesser as a sanction under Rules 37(b) and (d).[14] In resolving this matter we will address both rules separately.

### A. Sanctions under Rule 37(b)

■ The circuit court relied on Rule 37(b) in sanctioning Duke and Mr. Hesser for failing to obey its February 8, 2000, order.[15] Under that order, Duke and Mr. Hesser were obligated to respond to discovery requests made by Cattrell. In our review of the discovery request material we find that the only discovery request that was relevant to Duke and Mr. Hesser involved the request for production of documents.[16]

As previously indicated, prior to the trial court's actual entry of the order compelling responses to discovery requests, Duke and Mr. Hesser had responded generally to the requests. Further, the record discloses that because the request for production of documents was couched in broad terms, Duke and Mr. Hesser had contacted Cattrell on several occasions seeking to clarify what specific documents were being requested.[17] Cattrell refused to clarify what documents were being sought. Cattrell's conduct in refusing to honor a request for clarification is the dispositive issue for resolving the sanctions imposed under Rule 37(b).

No prior decision of this Court, or our Rules of Civil Procedure, addresses the issue of a party's duty to clarify discovery issues, when requested, before seeking sanctions based on a perceived violation of a prior order compelling discovery. Many federal district courts have local rules that require parties to use good faith in resolving discovery issues, after an order to compel is entered, before seeking sanctions. *See Kayhill v. Unified Gov't of Wyandotte County/Kansas City, Kansas*, 197 F.R.D. 454, 460 (D.Kan.2000) ("Defense counsel made a good faith effort to obtain these [discovery] responses without court action, and plaintiff has not shown that her failure to respond was substantially justified or that other circumstances make [a sanction] unjust."); *Airlines Reporting Corp. v. Grecian Travel, Inc.*, 170 F.R.D. 351, 353–354 (E.D.N.Y.1995) ("[Local] Rule 3(f) . . . requires that before a party moves for sanctions under Federal Rule 37, the moving party's attorney must file an affidavit certifying that the attorney

14. We recognize that additional arguments were raised by the parties. However, the manner in which we resolve this case disposes of our need to address certain arguments, and other arguments are not properly before us.

15. Before sanctions may be imposed under Rule 37(b), the requesting party must initially file a motion and the court must enter an order compelling discovery. *See State ex rel. McGraw v. West Virginia Judicial Review Bd.*, 165 W.Va. 704, 708–709, 271 S.E.2d 344, 347 (1980) ("Petitioner is not entitled to have us dismiss the complaint under Rule 37(b) because this action can be taken only after a party refuses to comply with a lawful discovery order."). . Subsequent failure to comply with the court order can lead to the imposition of sanctions. *Id.*

Generally, under Rule 37 of the Rules of Civil Procedure to trigger the imposition of sanctions where a party refuses to comply with a discovery request, the other party must file a motion to have the court order discovery. If the discovery order is issued and not obeyed, then the party may seek sanctions under Rule 37(b) of the Rules of Civil Procedure. Syl. pt. 1, *Prager v. Meckling*, 172 W.Va. 785, 310 S.E.2d 852 (1983).

16. Cattrell served the discovery requests collectively on Duke and Mr. Hesser, as well as the other defendants in the action. Neither Duke nor Mr. Hesser were included in the definition of respondents who were required to answer the interrogatories. Consequently, Duke and Mr. Hesser did not fail to respond to the posed interrogatories. .

17. We have extensively analyzed the written interrogatories and requests for production of documents. After our exhaustive review, we feel it incumbent to point out that the discovery requests in question are not a model of clarity. The murkiness of the discovery requests appears to be the foundation of the current problems between the parties.

has conferred with opposing counsel and worked in good faith to resolve the issues raised in the motion."). We note, however, that the duty to confer in this situation "does not require [a party] to beg [an opposing party] to comply with clear and unambiguous court orders before seeking sanctions." *Williams v. Chicago Bd. of Educ.*, 176 F.R.D. 547, 552 (N.D.Ill.1997).[18]

▌ In view of the foregoing, we hold that a party who has successfully obtained an order compelling discovery has a duty to act in good faith with the opposing party when the opposing party seeks clarification of what is sought under the order compelling discovery. Further, a party moving for sanctions under Rule 37(b) of the West Virginia Rules of Civil Procedure, for failure to comply with an order compelling discovery, must file with the motion an affidavit certifying that the attorney has conferred with opposing counsel and worked in good faith to resolve the issues raised in the motion but was unsuccessful.

▌ Turning to the specific facts of this case, it is clear that Cattrell did not act in good faith when Duke and Mr. Hesser sought clarification of the discovery request. Duke and Mr. Hesser attempted to respond to Cattrell's production of documents request, however, Cattrell expressed dissatisfaction with the quality of responses. Thereafter, Duke and Mr. Hesser attempted on several occasions to clarify the information sought. Duke and Mr. Hesser informed Cattrell that the requests for production were so broad that a full response would require hundreds of thousands of documents. Cattrell refused to clarify the discovery sought and eventually obtained sanctions under Rule 37(b).

We do not believe that the sanction imposed under Rule 37(b) was proper under the facts of this case. Duke and Mr. Hesser acted in good faith in attempting to comply with the circuit court's order. Cattrell, as the beneficiary of that order, did everything possible to prevent Duke and Mr. Hesser from complying therewith. Consequently, we find it was an abuse of the circuit court's discretion to impose Rule 37(b) sanctions upon Duke and Mr. Hesser.

### B. Sanctions under Rule 37(d)

We now turn our discussion to the appropriateness of the sanction imposed under Rule 37(d). The circuit court's order provided:

> Rule 37(d) of the West Virginia Rules of Civil Procedure provides this Court with authority to strike the pleadings of Defendants [Mr.] Hesser and [BB & L Duke] and to render a judgment by default in favor of the Plaintiff, Cattrell Companies, Inc., as a result of the Defendants' failure to attend at the July 19, 2001 depositions.

Thus, the sanction under Rule 37(d) was based solely on Duke and Mr. Hesser's failure to attend scheduled depositions. We must determine whether the circuit court's application of Rule 37(d) to the facts before it was in error.[19]

---

18. Notably, Rule 37(a)(2) sets forth the requirement that "the discovering party may move for an order compelling an answer" when "the movant in good faith has conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or action without court action." *See also Keplinger v. Virginia Elec. & Power Co.*, 208 W.Va. 11, 25 n. 19, 537 S.E.2d 632, 646 n. 19 (2000) (recognizing requirement that a party in "good faith ... confer[] or attempt[] to confer with the ... party failing to make the discovery in an effort to secure the information ... without court action"). We also note that under Rule 37(d) there is a requirement that parties attempt to confer to resolve a production of document dispute before seeking sanctions. *See* Rule 37(d) ("[The movant] shall include a certification that the movant has in good faith conferred or attempted to confer with the party failing to an-

swer or respond in an effort to obtain such answer or response without court action."). This provision does not apply when a party is seeking sanctions for violation of a motion to compel under Rule 37(b).

19. Duke and Mr. Hesser have argued that the sanction under Rule 37(d) was improper because there was no motion to compel the depositions. This argument is premised in part on some confusion from our decision in *Mills v. Davis*, 211 W.Va. 569, 567 S.E.2d 285 (2002). In syllabus point 5 of *Mills* we held:

> In the absence of an order compelling discovery granted pursuant to a motion made by a party, it is an abuse of a circuit judge's discretion to dismiss an action for a single or isolated failure to comply with a discovery request.

We begin by examining the pertinent language of Rule 37(d), which states that sanctions may be imposed when "a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails ... to appear before the officer who is to take the deposition[.]" According to its terms, this section is applicable in the context of a deposition only if a party "fails ... to appear" for the deposition. Duke and Mr. Hesser claim that Rule 37(d) is not triggered in this case because they did not *fail to appear* at their depositions, but rather *canceled* the depositions. Thus, the question we must answer is whether or not a party may be said to have failed to appear for a deposition as contemplated in Rule 37(d) when that party has actually canceled the deposition.

■ In making this determination, we find it prudent to examine how this aspect of Rule 37(d) has been previously applied. This Court has addressed the meaning of a failure to appear on only one prior occasion, in *Chandos, Inc. v. Samson*, 150 W.Va. 428, 146 S.E.2d 837 (1966). *Chandos* is not directly on point, however, as that case involved a failure to appear by a defendant who had been declared legally incompetent and was confined to a mental institution at the time the circuit court entered default judgment.[20] Unlike the case at hand, there was no dispute that the defendant had failed to appear at the deposition. Thus, *Chandos* is not instructive to our resolution of the instant case. In the absence of any prior authority from this Court aiding our analysis, we must look elsewhere for guidance. Because the pertinent language of Rule 37(d) of the Federal Rules of Civil Procedure is identical to our own rule, we look to how the "failure to appear" facet of Rule 37(d) has been applied in federal courts when a deponent has canceled a scheduled deposition.[21]

*Mills* would appear to suggest a broad rule requiring an order compelling discovery prior to the imposition of any sanctions. However, it has been explained that:

> In *Mills* ... the Supreme Court was confronted with a trial court's dismissal of an action because the plaintiff failed to attend a deposition. The Court reversed the dismissal and held that in the absence of an order compelling discovery granted pursuant to a motion made by a party, it is an abuse of a circuit judge's discretion to dismiss an action for a single or isolated failure to comply with a discovery request. While the facts of *Mills* would seem to suggest that the trial court dismissed the case under Rule 37(d), the opinion in *Mills* held that the dismissal was under Rule 37(b)(2)(C). Therefore, the *Mills* holding is inapplicable to Rule 37(d) sanctions.

Franklin D. Cleckley, et al., *Litigation Handbook on West Virginia Rules of Civil Procedure*, § 37(d), at 71–72 (Cum.Supp.2004). In other words, *Mills* did not overrule our prior case law on the issue of imposing sanctions under Rule 37(d) without having a prior order compelling discovery. We addressed this issue in syllabus point 2 of *Prager v. Meckling*, 172 W.Va. 785, 310 S.E.2d 852 (1983):

> The major exception to the requirement for an order compelling discovery before sanctions can be obtained is contained in Rule 37(d) of the Rules of Civil Procedure. This provision authorizes a party to seek sanctions directly from the court where the opposing party has failed: (1) to attend his own deposition; (2) to answer or object to interrogatories; or (3) to serve [a] written response to a request for inspection under Rule 34 of the Rules of Civil Procedure.

20. In this respect, the *Chandos* Court held

> A valid default judgment under Rules 37(d) and 55(b)(2), R.C.P., cannot be entered against a defendant who is at the time of the entry of such judgment an infant, incompetent person or an incarcerated convict, unless represented by a guardian, guardian *ad litem*, committee, curator, or other representative, and if a default judgment is entered against a defendant under such disability not properly represented it should be set aside upon proper motion.

Syl. pt. 2, *Chandos, Inc. v. Samson*, 150 W.Va. 428, 146 S.E.2d 837 (1966).

21. We have previously explained that:

> Because the West Virginia Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure, we often refer to interpretations of the Federal Rules when discussing our own rules. *See Painter v. Peavy*, 192 W.Va. 189, 192 n. 6, 451 S.E.2d 755, 758 n. 6 (1994) ("Because the West Virginia Rules of Civil Procedure are practically identical to the Federal Rules, we give substantial weight to federal cases ... in determining the meaning and scope of our rules."). *See, e.g., State v. Sutphin*, 195 W.Va. 551, 563, 466 S.E.2d 402, 414 (1995) ("The West Virginia Rules of Evidence are patterned upon the Federal Rules of Evidence, ... and we have repeatedly recognized that when codified procedural rules or rules of evidence of West Virginia are patterned after the corresponding federal rules,

Some federal courts appear to apply a strict interpretation of Rule 37(d) and indicate that sanctions under this rule are appropriate only where there has been an actual failure to appear. Under this interpretation, cancelling a deposition would not trigger sanctions under Rule 37(d). For example, in *Williams v. Board of County Commissioners of the Unified Government of Wyandotte County and Kansas City, Kansas*, 192 F.R.D. 698, 705–06 (D.Kan.2000), the United States District Court denied a defendant's request for sanctions for failure to appear at a deposition where the plaintiff had provided advanced notice of an inability to appear. In *Williams*, the defendants served on the plaintiff an "Amended Notice of Deposition" [22] setting the date to depose plaintiff at December 13, 1999. [23] *Id.* at 705. The court noted that the defendants did not consult with plaintiff's counsel about this date prior to serving the notice. *Id.* Shortly after serving the notice, and apparently without engaging in any discussion with the plaintiff regarding the deposition, defendants filed a motion to compel plaintiff's attendance at the deposition. *Id.* at 705–06. Thereafter, on December 8, 1999, five days prior to the scheduled deposition, plaintiff's counsel notified the defendants in writing that "he was unavailable to produce his client for deposition on December 13, 1999 due to his previously scheduled appearance at a Missouri Workers' Compensation Hearing." *Id.* at 706. Defendants responded with a letter dated December 10, 1999, asking plaintiff's counsel for dates and times to reschedule the deposition. *Id.* Based upon these facts, the district court reasoned:

there is no evidence before the Court to establish that Plaintiff failed to appear for a scheduled deposition on December 13, 1999. In a letter from Defendants' counsel to Plaintiff's counsel dated December 10, 1999, Defendants' counsel requested Plaintiff's counsel forward dates and times to *reschedule* the December 13, 1999 deposition. Based on mandatory language within Rule 37(d) requiring actual failure to report to a scheduled deposition before sanctions can be imposed, and based on Defendants' failure to allege in sufficient detail Plaintiff's failure to report to a scheduled deposition, Defendants' motion for sanctions will be denied.

*Id.* See also *O'Hara v. Board of Educ. of the Brooklyn City Sch. Dist.*, 72 Fed. Appx. 311, 314–15, 2003 WL 21774013, **3 (6th Cir. 2003) (mem) (reversing lower court's imposition of sanctions and finding Rule 37(d) did not apply where plaintiff's counsel canceled a deposition for personal reasons because 37(d) "permits the court to impose sanctions against a party who fails to appear for the taking of his properly noticed deposition.").

Other courts addressing this issue have applied a less strict interpretation to Rule 37(d). In these cases, where a party has provided notice that the deponent will not appear, the courts have based their determination of whether to sanction largely upon the particular facts involved, including the reason for the non-appearance and the amount of notice provided. A demonstration of this mode of reasoning may be found in the case of *N.L.R.B. v. Cable Car Advertisers, Inc.*, 319 F.Supp.2d 991 (N.D.Cal.2004). In this case, the N.L.R.B. issued, on January 6, 2004, a series of investigative subpoenas

federal decisions interpreting those rules are persuasive guides in the interpretation of our rules." (citations omitted)).
*Keplinger v. Virginia Elec. & Power Co.*, 208 W.Va. 11, 20 n. 13, 537 S.E.2d 632, 641 n. 13 (2000). West Virginia Rule of Civil Procedure 37(d) is basically the same as its federal counterpart. *Chandos, Inc. v. Samson*, 150 W.Va. 428, 146 S.E.2d 837 (1966) (decided under former rule); *Bell v. Inland Mut. Ins. Co.*, 175 W.Va. 165, 332 S.E.2d 127 (1985); *Doulamis v. Alpine Lake Prop. Owners Ass'n*, 184 W.Va. 107, 399 S.E.2d 689 (1990). We note, however, that " '[a] federal case interpreting a federal counterpart to a West Virginia rule of procedure may be persua-

sive, but it is not binding or controlling.' Syllabus point 3, *Brooks v. Isinghood*, 213 W.Va. 675, 584 S.E.2d 531 (2003)." Syl. pt. 3, *In re West Virginia Rezulin Litigation*, 214 W.Va. 52, 585 S.E.2d 52 (2003). Accordingly, we find it relevant to consider how federal courts apply their rule in construing our own rule.

**22.** There had apparently been earlier attempts to schedule the plaintiff's deposition but the court noted that those attempts were not relevant to the issue of sanctions. *Williams* at 706 n. 7.

**23.** This notice was served on November 29, 1999.

directed at Cable Car, which included two subpoenas that ordered the attendance of two of Cable Car's managing agents at depositions on January 20, 2004. *Cable Car* at 994. On January 16, 2004, Cable Car's counsel informed the N.L.R.B. by phone that Cable Car's managing agents would not appear at their scheduled depositions. *Id.* Cable Car later explained that the decision not to appear for the scheduled depositions was based upon concern that its managing agents would be required to appear for more than one deposition depending upon the outcome of another discovery dispute.[24] In affirming the lower court's imposition of sanctions, the district court explained

> Cable Car's position is not substantially justified inasmuch as it unilaterally cancelled depositions on a Friday, only three days before their scheduled date. Cable Car has little justification in failing to object earlier, especially since the face of the subpoenas stated that "objections to the subpoena must be made by a petition to revoke ... and must be received within five days of your having received the subpoena." It waited until the eleventh hour to cancel the deposition, causing the Board to incur certain alleged costs.

319 F.Supp.2d at 1001.[25]

Another illustrative case is *Tepsic v. National Railroad Passenger Corp.*, 1995 WL 540125 (E.D.La.1995). In *Tepsic*, the court was presented with a defense motion for imposition of sanctions under Rule 37(d) based on plaintiffs' cancellation of four depositions. *Tepsic* at *1. Two of the depositions were for named plaintiffs Elizabeth and Charles Tepsic, who were husband and wife. After several unsuccessful attempts to schedule depositions for Elizabeth and Charles Tepsic, their depositions were scheduled for July 25, 1995. *Id.* On July 24, 1995, only one day prior to the scheduled depositions, plaintiffs' counsel notified the defendant that Eliz-

abeth Tepsic would be unable to attend due to medical problems. *Id.*[26] Thereafter, on July 25, the day of the scheduled depositions, plaintiffs' counsel notified defendant that Charles Tepsic would not be able to appear for a deposition until his wife's medical crisis had been resolved. *Id.* In deciding whether to impose sanctions for a failure to appear with respect to these two depositions, the court concluded that an award of expenses for the failure of plaintiffs, Elizabeth Tepsic and her husband Charles, to attend scheduled depositions would be unjust despite the late hour of the notice as the cancellations resulted from the severe medical condition of Elizabeth Tepsic. *Id.*

To the contrary, however, the court found that sanctions were proper with respect to the two other cancelled depositions that were included in the defense motion for Rule 37(d) sanctions. One of those cancelled depositions involved an employee of the defendant. *Id.* at *2. The employee's deposition was cancelled by the plaintiffs the day before it was scheduled to occur. *Id.* The reason given by plaintiffs' counsel for cancelling the deposition was that "[s]omething very personal has taken place. I have just finished a three day jury trial and cannot be present for the depositions on Friday." *Id.* In a memorandum opposing the motion for sanctions, plaintiffs' counsel merely stated that he "had been involved the entire week in a jury trial and was exhausted among other personal problems." *Id.* Noting that by the time of the cancellation the employee had already traveled from Decatur, Illinois, to New Orleans for the deposition, the court stated:

> "The fact that plaintiffs' counsel was involved in a jury trial earlier in the week does not excuse his late cancellation of [the employee's] deposition. Counsel could have cancelled the deposition earlier, when he first became aware that he would, in

24. The implication being that if the other discovery dispute was resolved prior to the deposition, then all necessary matters could be addressed in one deposition.

25. The sanction imposed upon Cable Car for its failure to appear at the deposition required it to "reimburse the Board [N.L.R.B.] for the attorneys' fees and costs incurred by the Board in

connection with this subpoena enforcement proceeding and for costs associated with canceling the scheduled deposition trip." *Cable Car,* 319 F.Supp.2d at 1001.

26. The court was provided with a letter from Elizabeth Tepsic's physician documenting her medical condition and inability to appear for the scheduled deposition.

fact, be involved in a jury trial on some of the days preceding the deposition."

*Id.*

The final canceled deposition for which sanctions were imposed by the *Tepsic* court involved the defendant's expert witness. By correspondence dated July 13, 1995, defense counsel confirmed that the expert's deposition was scheduled for July 19, 1995, and the expert's report would be provided on July 17, 1995. *Tepsic* at *3. Plaintiffs' counsel cancelled the expert's deposition on July 18, once again on the day before the deposition was to occur. *Id.* The reason given for the cancellation was that plaintiffs' counsel had not received the expert's report until July 17. *Id.* Unpersuaded by this argument, the court commented that

> plaintiffs' counsel was informed, pursuant to defense counsel's July 13, 1995 correspondence, that he would be receiving [the expert's] report on July 17, 1995. If plaintiffs' counsel believed that receiving the report two days prior to the deposition would not provide him with sufficient time to "view" the report, he should have cancelled the deposition upon receipt of defense counsel's correspondence. Further, ... it was pursuant to plaintiffs' motion that defendants' deadline to submit expert reports was extended to July 28, 1995. Interestingly, in this same motion, plaintiffs also sought, and received, a cut-off date of July 15, 1995 for the taking of all expert depositions.

*Id.* (footnote omitted).[27]

In another 37(d) case, *Ogletree v. Keebler Co., Inc.*, 78 F.R.D. 661 (N.D.Ga.1978), the defendant and plaintiff had agreed that the plaintiff would be deposed on October 28, 1977. 78 F.R.D. at 661. Sometime prior to the scheduled deposition, however, defendant was notified that plaintiff had suffered an injury that would prevent her appearance at the scheduled deposition. *Id.* After again consulting with plaintiff's counsel, defense counsel re-scheduled the deposition for De-

cember 1, 1977, at 2:00 P.M. *Id.* at 661–62. Two hours before the scheduled deposition, plaintiff's counsel called the defendant requesting a postponement due to a scheduling conflict. *Id.* at 662. The deposition was then scheduled for December 8, 1977, at 2:00 P.M. One hour prior to this deposition the defendant received a call from a secretary for plaintiff's counsel, who explained that counsel was in court in Albany, Georgia, and could not attend the deposition. The court granted the defendant's subsequent motion for sanctions under Rule 37(d) and explained:

> In the instant action, the court concludes that defendant was not given reasonable notice of the latter two deposition cancellations, inasmuch as the postponements were sought within two hours of the scheduled deposition. It is therefore entitled to recover its expenses in connection with those attempts. The court notes that the rule provides for assessment of expenses against the attorney advising the party as well as against the party who fails to act. Since in the instant action the last two cancellations appear to be the fault of plaintiff's attorney, and not of the plaintiff, the court directs that he reimburse defendant Keebler Company for its expenses in connection with those postponed depositions. The court finds that any expenses associated with the deposition scheduled for October 28, 1977 should be borne by the defendant since injury to the plaintiff caused the postponement and reasonable notice of the change appears to have been given. Accordingly, defendant Keebler Company's request for expenses is granted, and defendant is directed to submit within ten (10) days an affidavit setting forth the expenses associated with the latter two deposition cancellations.

*Id.* (footnote omitted).

Finally, the United States Court of Appeals for the Ninth Circuit affirmed a dismissal based on multiple discovery violations that included the failure to appear at depositions in *Henry v. Gill Industries, Inc.*, 983

---

27. The sanction imposed upon the plaintiffs in *Tepsic* were to pay all the travel expenses of the employee witness (airfare, hotel, meals and parking), to pay the travel expenses of the expert witness and compensation at his hourly rate for his time spent in transit, and to pay an additional $1,000.00, as a portion of the attorney's fees incurred by the defendants in bringing the motion for sanctions. *Tepsic* at *3.

F.2d 943 (9th Cir.1993). With respect to the deposition issue, the court stated

> [plaintiff] Henry argues that he never "failed to appear" for his noticed deposition because each such deposition was vacated by agreement of the parties. He suggests that "the ordinary difficulties in coordinating calendars" should not be grounds for discovery sanctions. The record shows, however, and the *district court* found that Henry "twice notified defendants the business day before his properly noticed depositions were to have taken place that he would not attend...." Henry thus asks this court to hold that, even though he twice forced cancellation of his deposition by notifying Gill at the last minute that he would not appear, such conduct does not constitute a "failure to appear" because Gill's counsel, instead of sitting in a conference room waiting for Henry not to arrive, attempted to reschedule the deposition. We reject the suggestion that an unreasonable refusal to be deposed must be met with an unreasonable refusal to reschedule in order to warrant sanctions under Rule 37.

*Henry*, 983 F.2d at 947.

 After considering the foregoing cases, we are persuaded that the less strict interpretation of Rule 37(d) creates a more rational and just rule. Accordingly, we now hold under appropriate circumstances, a party may be sanctioned under Rule 37(d) of the West Virginia Rules of Civil Procedure for failing to attend a deposition notwithstanding the fact that the party cancelled the deposition. The factors to be considered in determining whether sanctions are appropriate are: (1) the timing of the cancellation; and (2) whether good cause for the cancellation has been shown.[28]

 Applying this standard to the case at hand, we are unable to conclude that the circuit court abused its discretion in finding Duke and Mr. Hesser's cancellation of depositions was sanctionable. The depositions of Mr. Hesser and a representative of Duke had been scheduled for July 19, 2002. Only one day before these depositions were to take place, Duke and Mr. Hesser telephoned Cattrell and canceled the depositions. There was no medical emergency or other compelling reason for the cancellation. The reason given was merely that Duke and Mr. Hesser's West Virginia counsel had been unable to receive an answer from New York counsel, and that New York counsel had been involved in a five-week trial. Under these circumstances, sanctions could be imposed under Rule 37(d). Accordingly, we affirm the circuit court's order insofar as it determined that sanctions should be imposed for Duke and Mr. Hesser's failure to attend depositions. Having determined that sanctions in general were appropriate, however, we now consider whether the particular sanctions imposed by the circuit court, striking Duke and Mr. Hesser's defenses, entering default judgments against them, and awarding damages to Cattrell, were justified.

This Court has previously held that in order to impose the severe sanctions of striking a party's answer or entering default judgment for the failure to appear at a deposition, such failure must be willful.

> Under the provision of Rule 37(d), R.C.P., the answer of a defendant should not be stricken from the record upon motion of the plaintiff for the failure of a defendant to appear for the taking of a deposition, after being served with proper notice, and a valid default judgment cannot be granted under said Rule unless competent evidence is presented or an affidavit is filed with the motion under the provisions of Rule 43(e), R.C.P., showing that the defendant "wilfully" failed to appear.

Syl. pt. 1, *Chandos, Inc. v. Samson,* 150 W.Va. 428, 146 S.E.2d 837 (1966). We take note that Rule 37(d) has been amended since our 1966 decision in *Chandos.* Furthermore, in conducting our research of this issue, we have observed that many federal courts interpreting more modern versions of the rule allow sanctions not only for willfulness, but also for bad faith or other fault by the offending party. *See Henry v. Gill Indus.,*

---

28. The more compelling the good cause for cancellation, the more acceptable a late notice would be. For example, a sudden medical emergency may justify a cancellation within hours or minutes of a scheduled deposition. Sanctions would not be appropriate in those circumstances.

---

*Inc.*, 983 F.2d 943 (9th Cir.1993) ("Where the drastic sanctions of dismissal or default are imposed, however, the range of discretion is narrowed and the losing party's non-compliance must be due to willfulness, fault, or bad faith." (citation omitted)); *S.E.C. v. Research Automation Corp.*, 521 F.2d 585, 588 (2d Cir.1975) (discussing Rule 37(d) and commenting that "[r]ecognizing the severity of the sanction of a judgment granting affirmative relief by default, we have held that, notwithstanding the elimination of the term 'willful' from Rule 37 as a result of the 1970 amendments, the sanction should not be imposed because of negligence, and that the plaintiff must demonstrate that the defendant's failure to comply is due to willfulness, bad faith or fault and not to an inability to comply." (citing *Flaks v. Koegel*, 504 F.2d 702, 708–09 (2d Cir.1974)); *Fox v. Studebaker–Worthington, Inc.*, 516 F.2d 989, 993 (8th Cir.1975) ("Where ... the drastic sanctions of dismissal or default are imposed, the range of discretion is more narrow and the losing party's non-compliance must be due to wilfulness, fault or bad faith." (citation omitted); *Mercado v. Division of New York State Police*, 989 F.Supp. 521, 524 (S.D.N.Y.1998) (stating that "[d]ismissal with prejudice is a harsh remedy to be used only in extreme situations ...., and then only when a court finds willfulness, bad faith, or any fault on the part of the prospective deponent.") (internal citations omitted).

We have also observed that several federal courts have provided certain criteria to be considered prior to imposing a sanction of dismissal or default judgment. In this regard, the court in the *Henry v. Gill* case, discussed above, explained that

"[b]ecause the sanction of dismissal is such a harsh penalty, the district court must weigh five factors before imposing dismissal: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Porter v. Martinez*, 941 F.2d 732, 733 (9th Cir.1991) (citations and internal punctuation omitted). "The first two of these factors favor

the imposition of sanctions in most cases, while the fourth cuts against a ... dismissal sanction. Thus the key factors are prejudice and the availability of lesser sanctions." *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir.1990).

983 F.2d 943, 948. Similarly, in *Shamis v. Ambassador Factors Corp.*, a United States District Court discussed the imposition of dismissal as a sanction for a violation of Rule 37(d) as follows:

It is well settled law in this Circuit that the sanction of dismissal sought by Defendants here "is a drastic penalty which should be imposed only in extreme circumstances." ... Accordingly, this "harsh remedy" is appropriate only when a court finds "willfulness, bad faith, or any fault on the part" of the plaintiff.... In addition to a finding that [Plaintiff] acted willfully or in bad faith, employing dismissal as a sanction requires findings that (1) Defendants were seriously prejudiced by [Plaintiff's] actions; and (2) that alternative sanctions would not adequately punish [Plaintiff] and deter future discovery violations.

34 F.Supp.2d 879, 887 (S.D.N.Y.1999) (internal citations omitted). *See also In re Sumitomo Copper Litigation*, 204 F.R.D. 58, 60 (S.D.N.Y.2001) ("A number of factors may be considered when deciding whether discovery abuse warrants the entry of a default judgment against the transgressor. Among those factors are: '(a) willfulness or bad faith of the noncompliant party; (b) the history, if any, of noncompliance; (c) the effectiveness of lesser sanctions; (d) whether the noncompliant party had been warned about the possibility of sanctions; (e) the client's complicity; and (f) prejudice to the moving party.' ... The need to deter discovery abuse and efficiently control dockets may also legitimately be taken into consideration." (internal citations omitted)); *Sadler v. Dimensions Health Corp.*, 178 F.R.D. 56, 59 (D.Md.1998) (discussing dismissal or default as sanction for violations of 37(b) and (d), and stating "a court seeking to impose dismissal as a discovery sanction under Rule 37 must inquire into: (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice the noncompliance has caused the adversary,

which necessarily includes an inquiry into the materiality of the evidence the party failed to produce; (3) the need for deterring the particular type of noncompliance; and (4) the effectiveness of less drastic sanctions." (citations omitted)). *Cf. In re Rossmiller,* 140 B.R. 1000, 1003–04 (D.Col.1992) (discussing Rule 37(d) in context of failure to respond to interrogatories or requests for production and commenting that "[a] default judgment is a harsh sanction that will be imposed only when the failure to comply with discovery demands is the result of " 'wilfulness, bad faith, or [some] fault of petitioner' rather than inability to comply," and further stating that "[i]n making findings on the issue of fault, a court should consider ... (1) the degree of actual prejudice to [the] other party; (2) the amount of interference with the judicial process; and (3) the culpability of the litigant. Finally, the cases teach that a court should not enter a default judgment without first considering if lesser sanctions would be effective." (internal citations omitted)); *Mutual Fed. Sav. & Loan Ass'n v. Richards & Assoc.,* 872 F.2d 88, 92 (4th Cir.1989) (discussing violations of 37(d), apparently in context of interrogatories and requests for production of documents where there had been discovery orders that were violated, and observing the following four part test to be used when sanction imposed is judgment by default: "(1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice [the] noncompliance caused [the] adversary, which necessarily includes an inquiry into the materiality of the evidence [that was not produced]; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions." (citation omitted)).

■ After thoroughly considering the foregoing cases, we have determined that our prior holding in syllabus point 1 of *Chandos* should be modified. Recognizing that dismissal and default are drastic sanctions that should be imposed only in extreme circumstances, we now hold that before a circuit court may impose the sanction of dismissal or default judgment under Rule 37(d) of the West Virginia Rules of Civil Procedure for a party's failure to attend a deposition, the court must first make a finding that the party's failure was due to willfulness or bad faith. Once this finding has been made, the circuit court must then weigh the following factors to determine if default judgment or dismissal is an appropriate sanction: (1) the degree of actual prejudice to the other party; (2) the effectiveness of less drastic sanctions; and (3) any other factor that is relevant under the circumstances presented.

■ Applying this test to the case at hand, we initially conclude that the record demonstrates wilfulness and bad faith on the part of Duke and Mr. Hesser. The argument that counsel's unresponsiveness to Cattrell's various requests to schedule depositions and the late hour of Duke and Mr. Hesser's ultimate cancellation of the depositions were justified because Duke and Mr. Hesser's New York counsel had been involved in a trial for five weeks is simply not persuasive, particularly when Cattrell's first request to schedule the deposition was seven weeks prior to the cancellation. We additionally take note that Mr. Hesser was never even advised that Cattrell had requested or scheduled a time to take his deposition, which strongly indicates that there was never any real intention to have Mr. Hesser appear for the deposition and makes the late hour of its cancellation more egregious in our eyes.

■ After finding the existence of wilfulness and bad faith, we must next weigh the remaining factors of the test: (1) the degree of actual prejudice to Cattrell; (2) the effectiveness of less drastic sanctions; and (3) any other factor that is relevant under the circumstances presented. After weighing these factors, we conclude that the sanctions imposed by the circuit court were unduly harsh. While Cattrell has certainly suffered prejudice from Duke and Mr. Hesser's conduct, we do not believe that the prejudice suffered was of a degree to warrant a default judgment. There is nothing in the record indicating any impediment to Cattrell taking the depositions in the future, for example there is no allegation that any deponent has died or otherwise become unavailable. Likewise, there has been no indication that the delay in obtaining the desired depositions will cause Cattrell to be adversely affected at trial.

Under these circumstances, we find that the circuit court abused its discretion by virtue of the sanctions it imposed. Accordingly, the circuit court's order is reversed insofar as it struck Duke and Mr. Hesser's defenses, entered default judgments against them, and awarded damages to Cattrell.[29]

■ Although we find that the particular sanctions imposed by the circuit court in this case were too harsh, less onerous sanctions are certainly appropriate. Consequently, we direct the circuit court to enter an order imposing the following sanctions: (1) Cattrell's costs and/or attorney fees incurred in connection with the cancellation of the depositions scheduled for July 19, 2001, shall be assessed to Duke and Mr. Hesser; (2) Cattrell's attorney's fees and costs incurred in seeking sanctions shall be assessed to Duke and Mr. Hesser. Given the previous delays in this case, we further direct that the trial judge shall set an expedited discovery schedule. On remand, the cancelled depositions shall be noticed and completed within thirty days, and shall take place within the State of West Virginia. Any document reviews shall likewise take place within the State of West Virginia. Finally, Cattrell's attorney's fees and costs of this appeal are assessed to Duke and Mr. Hesser. Thus, the circuit court shall enter an order awarding reasonable attorney's fees and costs to Cattrell.

## IV.

## CONCLUSION

For the foregoing reasons, we affirm in part, and reverse in part, the October 1, 2003, order by the Circuit Court of Tyler County and remand this case for further proceedings not inconsistent with this opinion.

---

29. We wish to note, however, that it has become apparent in our review of this case that this action has been fraught with conflict and various antics by the parties directed at delaying its progress toward final resolution. The record demonstrates that the trial court has had to endure numerous hearings and render various rulings in an effort to control the parties' conduct. In this respect, we note with particularity that New York counsel representing Duke and Mr. Hesser (as well as the other related defendants who are not parties to this appeal) has demonstrated a cal-

The Clerk of this Court is directed to issue the mandate in this case forthwith.

Affirmed in part, Reversed in part, and remanded with directions.

---

lous, and extremely distasteful, disregard for the proceedings in this case, and has repeatedly impeded its progress. The record illustrates that Duke and Mr. Hesser's West Virginia counsel acted in an appropriate and timely manner in reporting all pertinent information to New York counsel, and that the impediments to progression were caused by New York counsel. In light of the profound difficulties presented by this case, we applaud Judge Karl for his patience and his efforts toward moving this case to final resolution.