IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2016 Term

**FILED**
**June 10, 2016**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 15-0012

OLD REPUBLIC INSURANCE COMPANY,
Petitioner

v.

JASON D. O'NEAL and ANDREA O'NEAL, his wife,
Individually, and as parents and next friends of
ANDREW SCOTT O'NEAL, ANNA LEIGH GRACE O'NEAL,
and AUSTIN MATTHEW O'NEAL, Infants under the age of eighteen,
Respondents

Appeal from the Circuit Court of Wyoming County
The Honorable Warren R. McGraw, Judge
Civil Action No. 10-C-20

REVERSED, IN PART; AFFIRMED, IN PART.

Submitted: February 10, 2016
Filed: June 10, 2016

Michael J. Schessler, Esq.                     W. Stuart Calwell, Esq.
Paul E. Frampton, Esq.                         David H. Carriger, Esq.
Bowles Rice LLP                                The Calwell Practice, LC
Charleston, West Virginia                      Charleston, West Virginia
Counsel for the Petitioner                     Counsel for the Respondents

JUSTICE WORKMAN delivered the Opinion of the Court.
JUSTICE LOUGHRY concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.

## SYLLABUS BY THE COURT

1. "In reviewing an order denying a motion under Rule 60(b), W.Va.R.C.P., the function of the appellate court is limited to deciding whether the trial court abused its discretion in ruling that sufficient grounds for disturbing the finality of the judgment were not shown in a timely manner." Syl. Pt. 4, *Toler v. Shelton*, 157 W. Va. 778, 204 S.E.2d 85 (1974).

2. "A motion to vacate a judgment made pursuant to Rule 60(b), West Virginia Rules of Civil Procedure, is addressed to the sound discretion of the court, and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion." Syl. Pt. 5, *Toler v. Shelton*, 157 W. Va. 778, 204 S.E.2d 85 (1974).

3. "A court, in the exercise of discretion given it by the remedial provisions of Rule 60(b), W.Va.R.C.P., should recognize that the rule is to be liberally construed for the purpose of accomplishing justice and that it was designed to facilitate the desirable legal objective that cases are to be decided on the merits." Syl. Pt. 6, *Toler v. Shelton*, 157 W. Va. 778, 204 S.E.2d 85 (1974).

4.     West Virginia Rule of Civil Procedure 60(b) may be used as a means to seek relief from a judgment or order that was not noticed to a party in accordance with West Virginia Rule of Civil Procedure Rule 77(d) upon a showing of diligence or exceptional circumstances by the aggrieved party.  The requisite diligence or exceptional circumstances necessary for Rule 60(b) relief under these circumstances will require a case-by-case analysis.

5.     "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

6.     """A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).' Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992)." Syl. Pt 2, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

7.     "'The doctrine of subrogation is that one who has the right to pay, and does pay, a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed against that other.' Syl. Pt. 1, *Bassett v. Streight*, 78

ii

W.Va. 262, 88 S.E. 848 (1916)." Syl. pt. 4, *Ray v. Donohew*, 177 W.Va. 441, 352 S.E.2d 729 (1986)." Syl. Pt. 2, *Bush v. Richardson*, 199 W. Va. 374, 484 S.E.2d 490 (1997).

8. "'The right of subrogation depends upon the facts and circumstances of each particular case. *Huggins v. Fitzpatrick*, 102 W.Va. 224, 228, 135 S.E. 19, 20 (1926).' Syl. pt. 3, *Ray v. Donohew*, 177 W.Va. 441, 352 S.E.2d 729 (1986)." Syl. Pt. 3, *Bush v. Richardson*, 199 W. Va. 374, 484 S.E.2d 490 (1997).

Workman, Justice:

This case is before the Court upon the appeal of the Petitioner Old Republic Insurance Co. (hereinafter referred to as "Old Republic") from two orders entered in the Circuit Court of Wyoming County, wherein the court denied Old Republic's Rule 60[1] motion for relief from judgment and motion for summary judgment. Old Republic argues[2] that the circuit court 1) abused its discretion when it denied Old Republic's Rule 60 motion for relief from entry of judgment order and 2) erred in its application of statutory and substantive law by granting the Respondents (hereinafter referred to collectively as "the Plaintiffs") summary judgment and determining that Old Republic was not entitled to a statutory right of subrogation as set forth in West Virginia Code § 23-2A-1 (2010).[3] Having reviewed the parties' briefs and arguments, the appendix record and all other matters before the Court, we find that the circuit court erred in denying Old Republic's Rule 60 motion; however, we affirm the circuit court's entry of summary judgment in favor of the Plaintiffs. As we will discuss in greater detail below, Old Republic's claim for subrogation fails because it is

_____

[1]*See* W. Va. R. Civ. P. 60(b) set forth *infra* in section III. A. of this opinion.

[2] Old Republic's two assigned errors are lengthy, cumbersome, and contain subparts that are repetitious of the larger assignments of errors. Thus, we condense the two errors for discussion purposes. *See In re Tax Assessments Against Pocahontas Land Corp.*, 158 W. Va. 229, 234, 210 S.E.2d 641, 645-46 (1974) ("The assignments of error are numerous and are lengthy, repetitious and confusing for each appeal. The assignments may be condensed . . . .").

[3]*See* W. Va. Code § 23-2A-1(b) set forth *infra* in section III. B. of this opinion.

1

attempting to recover money that it never expended and that its insured, Speed Mining, is not entitled to recover.

## I. Facts and Procedural History

This case arises from a June 20, 2009, accident at an underground American Eagle Mine in Kanawha County West Virginia. The Plaintiff, Jason O'Neal,[4] who was employed as an electrician by Speed Mining, LLC, ("Speed Mining"), was working in the mine when a shuttle car struck and ran over him. The accident caused catastrophic injuries to Mr. O'Neal, including the loss of one leg, a significant portion of his pelvis and his genitalia.

On February 11, 2010, the Plaintiffs[5] filed a lawsuit against Speed Mining,[6] alleging claims of deliberate intention pursuant to West Virginia Code § 23-4-2 (2005)[7] and

---

[4]Mr. O'Neal was approximately twenty-nine years old at the time. He was married and had three minor children.

[5]Mr. O'Neal's lawsuit included claims of loss of consortium and support on behalf of his wife and children.

[6]Speed Mining is not a party to the instant appeal.

[7]The Legislature recently amended West Virginia Code § 23-4-2 (Supp. 2015) with the changes becoming effective June 12, 2015. Because the accident occurred in 2009, the 2005 version of the statute is applicable to this case.

2

common law negligence. The Plaintiffs also asserted a products liability claim against four related companies and individuals, collectively referred to as the Baughan defendants.[8]

At the time of the accident, Speed Mining was a named insured on a workers' compensation policy of insurance issued by Old Republic to Mangum Coal Company.[9] As a result of the accident, Mr. O'Neal filed a workers' compensation claim. Mr. O'Neal has received workers' compensation benefits under Speed Mining's workers' compensation policy and he will continue to receive workers' compensation for his injuries as his workers' compensation claim remains open.[10]

According to the terms of Old Republic's policy, there was a $2,000,000 workers' compensation deductible amount for bodily injury by accident that was paid by Speed Mining. Beverly Sellers, Old Republic's manager of its workers' compensation unit, testified during her deposition that "[i]t was Patriot's [Speed Mining's parent company] wish

---

[8]The Baughan defendants included the Baughan Group, Inc., Coal Age, Inc., d/b/a CAI Industries, Robertson, Inc., d/b/a Gauley Robertson, and Roger Baughan. These defendants are not involved in the instant appeal.

[9]Patriot Coal acquired Magnum Coal and all of its subsidiaries, including Speed Mining, about a year before the accident at issue.

[10]The workers' compensation benefits that are the subject of the subrogation claim were paid to the Plaintiffs through a third-party administrator, Avizent, according to the deposition testimony of Beverly Sellers, Old Republic's manager of its workers' compensation unit. Old Republic consented to Avizent's handling of insured claims for Speed Mining.

to fund the $2 million deductible themselves . . . and Old Republic agreed to that." Moreover, if Old Republic paid benefits for the $2,000,000 of coverage it would be reimbursed by Speed Mining. The policy provided, "you will reimburse us up to the Deductible Amount(s) stated in the Schedule for all payments we may make on your behalf because of bodily injury to one or more persons as a result of any one accident . . . ."

Further, under the terms of the policy, Old Republic retained all rights to subrogation, even as to deductible amounts. The policy provided:

> We have your rights and the rights of persons entitled to the benefits of this insurance to recover all advances and payments, including those within the Deductible Amounts from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them. If we recover any advance or payment made under this policy from anyone liable for the injury, the amount we recover will first be applied to any payments made by us on this injury in excess of the Deductible Amount(s); only then will the remainder of the recovery, if any, be applied to reduce the Deductible Amount(s) paid or reimbursed or reimbursable by you on this injury. (See Attached Endorsement).

The Plaintiffs were fully aware of the statutory right of workers' compensation subrogation as demonstrated by a May 24, 2010, letter from David H. Carriger, the Plaintiffs' attorney, to Michele Craft of Avizent, Old Republic's third-party administrator. In the letter, Mr. Carriger "requests an itemization of whatever lien amount you (or any other provider of workers compensation benefits) intend to assert, should Mr. O'Neal recover monies from

4

third-parties as a result of the workplace injuries." In response to the Plaintiffs' inquiry, by letter dated June 17, 2010, Christopher Brumley, an attorney for Speed Mining, indicated that Old Republic was entitled by statute to a subrogation lien and that as of that date, $1,068,993.77 from the workers' compensation claim had been paid by Speed Mining. Mr. Brumley further indicated in the letter that "Speed Mining is self insured up to its $2 million self insured retention on the policy." According to Mr. Brumley, "Old [R]epublic is the carrier after the $2 million, so any subrogation frights [sic] after that amount will be the statutory right of Old [R]epublic."

The information given by Mr. Brumley in the aforementioned letter concerning Speed Mining being self-insured was incorrect and was later corrected by several different communications, both emails and letters, between Old Republic, Avizent and the Plaintiffs' counsel. Additionally, Ms. Sellers testified during her deposition that Speed Mining was not self-insured. Moreover, the record contains repeated notices either from Old Republic, Speed Mining's counsel or Avizent to the Plaintiffs' counsel regarding Old Republic's statutory right of subrogation prior to any settlements in the case.

On October 13, 2011, the Plaintiffs settled their deliberate intention claim against Speed Mining.[11] That settlement, according to the language of West Virginia Code § 23-2A-1(e),[12] was not subject to a workers' compensation subrogation lien and Old Republic is not seeking any amount as a result of subrogation from this settlement. Language contained in the settlement agreement relating to the deliberate intention claim, however, is important to the resolution of this case. In the agreement, the Plaintiffs and Speed Mining expressly declared that "this Agreement is the entire agreement and encompasses all terms and agreements negotiated by them in settlement of *any and all claims relating to the Subject Incident* and that there are not other writings whatsoever." (Emphasis added).

On March 21, 2012, the Plaintiffs moved the circuit court during a status conference to amend their complaint to add a declaratory judgment action against Old Republic as it had asserted a statutory subrogation lien with respect to any settlement obtained by the Plaintiffs from the remaining Baughan defendants.

---

[11]Speed Mining's insurer for the deliberate intention claim was Commerce and Industry Insurance Company. The settlement amount is confidential and has not been disclosed in the appendix record or briefs before the Court.

[12]West Virginia Code § 23-2A-1(e) provides, in relevant part, that "[t]he statutory subrogation described in this section does not apply to uninsured and underinsured motorist coverage *or any other insurance coverage purchased . . . on behalf of the injured worker.*" *Id.* (emphasis added). The deliberate intention claim was subject to insurance coverage that was purchased by Speed Mining on behalf of its workers, including Mr. O'Neal.

The Plaintiffs thereafter settled the products liability claims against the Baughan defendants at a mediation that occurred on April 26, 2012. Old Republic was not a party to the mediation and had not yet been brought into the action, because the circuit court had not yet ruled on the motion to amend the Plaintiffs' complaint.

In an order entered May 1, 2012, the circuit court granted the Plaintiffs' motion to amend their complaint to add a declaratory judgement action against Old Republic. In granting the motion, the circuit court found that "the statutory right of subrogation under W. Va. Code § 23-2A-1 is not available to the aforementioned insurer . . . [as] it is established that said insurer has not actually paid money or medical benefits to (or for the benefit of) Mr. O'Neal." Nevertheless, the Plaintiffs thereafter filed its amended complaint adding the third-party declaratory judgment action against Old Republic on May 21, 2012.

On July 2, 2012, the Plaintiffs and the Baughan defendants executed a Settlement Agreement Release. The Plaintiffs' counsel did not take any action to protect Old Republic's claimed statutory lien[13] before distributing the proceeds of this settlement, which amounted to $3.5 million. At the time the settlement agreement was executed and the

---

[13]*See* W. Va. Code § 23-2A-1(e) set forth *infra* in section III. B. (creating duty on part of injured worker and his counsel to protect statutory right of subrogation or risk losing right to retain attorney fees and costs out of subrogation amount and also creating cause of action that insurer can bring against injured worker and his counsel to recover subrogated amount, as well as attorney fees and costs).

Plaintiffs recovered this money from the Baughan defendants, workers' compensation benefits in the amount of $1,845,197.13 – $1,738,513.31 in medicals and $106,683.82 in indemnity – had been paid to, or for the benefit of, Mr. O'Neal by Speed Mining due to the $2,000,000 deductible in the Old Republic workers' compensation policy. This is the subrogation amount sought by Old Republic from the settlement with the Baughan defendants arising out of the Plaintiffs' product liability claim.

Old Republic filed its answer to the third-party complaint and asserted its own declaratory judgment action against the Plaintiffs on July 23, 2012. Discovery followed and both parties filed motions for summary judgment. On December 18, 2013, the circuit court held a hearing regarding the motions. At the conclusion of the hearing, the circuit court made no rulings on either summary judgment motion; however, the court asked both parties to submit proposed orders by January 15, 2014.

On January 27, 2014, without any notice to Old Republic, the circuit court entered the Plaintiffs' proposed order. The order entered was styled, "[Proposed] Order Granting Plaintiff Jason D. O'Neal's Motion for Summary Judgment." The Plaintiffs' counsel received a "courtesy call" informing him that his proposed order was to be entered by the circuit court. The proposed order that was entered by the circuit court only directed service to the Plaintiffs' counsel as the Plaintiffs submitted the proposed order with only

their attorneys' names on it for signature. Consequently, the circuit clerk did not send a copy of the proposed order, which was entered by the circuit court as the final order, to Old Republic's counsel. Moreover, when the order was entered onto the circuit court's docket, the entry was for "[Proposed] Order Granting Jason D. O'Neal's Motion for Summary Judgment."

About one month later, on February 25, 2014, Old Republic's counsel checked the circuit court's docket utilizing "Circuit Express" a third-party vendor that provides electronic docket information to lawyers in West Virginia. Old Republic's counsel saw the styled "proposed" order and attempted to view the same, but could not do so for reasons that are not apparent in the record. Old Republic's counsel then called the Wyoming County Circuit Clerk's office and asked whether a final order had been entered in the case. The official in the circuit clerk's office indicated that only the "proposed" order had been docketed. Old Republic's counsel continued to electronically monitor the docket sheet for the next six months. In late August of 2014, Old Republic's counsel contacted both the circuit court and the Plaintiffs' attorney regarding the status of the case and was advised that a final order had been entered. On September 4, 2014, Old Republic's counsel was provided a copy of the January 24, 2014, final order by facsimile, which was styled as a "proposed" order granting the Plaintiffs' summary judgment. Counsel for Old Republic filed a motion pursuant to Rule 60(b) of the West Virginia Rules of Civil Procedure on

September 12, 2014, requesting the circuit court to re-enter the January 27, "proposed" order as the final order so that Old Republic could appeal. By order entered December 18, 2014, the circuit court denied Old Republic's motion.

## II. Standard of Review

Because the applicable standard of review is different for each of the issues addressed, we will set out the applicable standard of review in the discussion of each issue.

## III. Discussion of Law

### A. Rule 60(b) Motion[14]

The first issue before the Court concerns whether the circuit court abused its discretion when it denied Old Republic's Rule 60(b)[15] motion for relief from the entry of the "[Proposed] Order Granting Plaintiff Jason D. O'Neal's Motion for Summary Judgment." Old Republic argues that the circuit court "arbitrarily and irrationally" refused to correct the failure to provide proper notice of the order, thereby depriving Old Republic of its due

---

[14]Old Republic filed its motion in the circuit court asking for relief from the judgment below pursuant to Rule 60(a) ("clerical mistakes") and Rule 60(b)(1) ("mistake, inadvertence surprise, excusable neglect, or unavoidable cause" or (6) ("any other reason justifying relief from the operation of the judgment"). On appeal, Old Republic discusses the application of Rule 60 in a very generic fashion, never expressly referring to Rule 60(a). Old Republic, however, does expressly refer to Rule 60(b) and, consequently, our ruling today focuses upon an application of Rule 60(b). It would behoove counsel in the future to be precise in setting forth the authority relied upon when arguing before this Court.

[15]*See* W. Va. R. Civ. P. 60(b) *infra*.

10

process right to appeal. Old Republic maintains that the circuit court improperly created an affirmative duty for a party to monitor the docket to find any disguised order that may be a final order after Old Republic was not served with a copy of the order upon its entry and the Plaintiffs left Old Republic's counsel's name off said order. Further, Old Republic simply requested the circuit court to vacate the entry of the January 27, 2014, "proposed" order and re-enter that order to allow Old Republic the right to appeal the same. Thus, Old Republic asserts that the Plaintiffs would not have suffered any undue or unfair prejudice by the circuit court's correction of the error in this manner.

Conversely, the Plaintiffs contend that Old Republic's counsel should have further investigated when he discovered that a "proposed" order had been entered to see whether that order was the final order. Yet, despite having knowledge that the "proposed" order had been entered on the docket sheet of the circuit court, Old Republic undertook no further investigation to ascertain what the order was and, therefore, delayed for six months the filing of a motion pursuant to West Virginia Rule of Civil Procedure 60(b). The Plaintiffs argue that the circuit court correctly determined that this delay was the result of the dilatory conduct of Old Republic's counsel. The Plaintiffs further contend that all Old Republic's assignments of error related to the January 27, 2014, order are untimely and should be stricken from the record.[16]

---

[16]*See* Syl. Pt. 3, *Toler v. Shelton*, 157 W. Va. 778, 204 S.E.2d 85 (1974) (holding that
(continued...)

11

The circuit court found that because Old Republic's counsel, using "Circuit Express," knew the Plaintiffs' proposed order had been listed on the docket by the circuit clerk on January 27, 2014, "[Old Republic's] counsel . . . admitted that he received actual notice from another source that the order in question was entered by the Clerk on the docket prior to the deadline for filing a Notice of Appeal[.]" Thus, the circuit court determined that it was not requiring a party to "mine the docket" searching for notice of entered orders. The circuit court went on to characterize Old Republic's counsel's "lack of action" as being "inconceivable" and "cavalier."

The standard of review applicable to this issue is that "[i]n reviewing an order denying a motion under Rule 60(b), W.Va.R.C.P., the function of the appellate court is limited to deciding whether the trial court abused its discretion in ruling that sufficient grounds for disturbing the finality of the judgment were not shown in a timely manner." Syl. Pt. 4, *Toler*, 157 W. Va. at 778, 204 S.E.2d at 86. We further held that "[a] motion to vacate a judgment made pursuant to Rule 60(b), West Virginia Rules of Civil Procedure, is addressed to the sound discretion of the court, and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion." 157 W.

---

[16](...continued)
"[a]n appeal of the denial of a Rule 60(b) motion brings to consideration for review only the order of denial itself and not the substance supporting the underlying judgment nor the final judgment order.").

12

Va. at 778, 204 S.E.2d at 86, Syl. Pt. 5. With the foregoing in mind, we now undertake an examination of the issue before us.

While not raised by either party, a necessary prerequisite to the ultimate resolution of this issue is whether Rule 60(b) of the Rules of Civil Procedure can be used to set aside a judgment that was not noticed to a party under Rule 77(d) of the Rules of Civil Procedure. Thus, we begin by examining these two rules. First, West Virginia Rule of Civil Procedure 60(b) provides, in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.

*Id.* (emphasis added). Next, West Virginia Rule of Civil Procedure 77(d) provides,

> Immediately upon the entry of an order or judgment *the clerk*, except as to parties who appear of record to have had

13

notice thereof, *shall serve by mail a notice of the entry in the manner provided for in Rule 5 upon every party affected thereby who is not in default for failure to appear, and shall make a note of the mailing in the docket.* Such mailing is sufficient notice for all purposes for which notice of the entry of an order is required by these rules; but any party may in addition serve a notice of such entry in the manner provided in Rule 5 for the service of papers. *Lack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed.*[17]

*Id.* (emphasis and footnote added).

From a plain reading of Rule 77(d), a circuit clerk's office has a mandatory duty to mail a copy of an order or judgment to all parties affected by the order or judgment. The rule, however, further provides that a circuit clerk's failure to give notice of the entry of an order or judgment "*does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed.*"  *Id.* (emphasis added). Consequently, had Old Republic been asking for relief solely under the auspices of Rule 77(d), the circuit did not have authority to grant relief.

Old Republic, rather than relying only upon Rule 77(d), also invoked the protections afforded by Rule 60(b), which provides for relief from a final judgment or order

---

[17]Additionally, West Virginia Trial Court Rule 24.01(b) provides:  "Except for good cause or unless otherwise determined by the judicial officer, *no order may be presented for entry unless it bears the signature of all counsel and unrepresented parties.*"  (Emphasis added).

14

based upon a variety of reasons including "[m]istake, inadvertence, surprise, excusable neglect, or unavoidable cause" and "any other reason justifying relief from the operation of judgment." W. Va. R. Civ. P. 60(b)(1) and (6). This Court has previously recognized a liberal construction of Rule 60(b) as follows:

> [a] court, in the exercise of discretion given it by the remedial provisions of Rule 60(b), W.Va.R.C.P., should recognize that *the rule is to be liberally construed for the purpose of accomplishing justice and that it was designed to facilitate the desirable legal objective that cases are to be decided on the merits*.

*Toler*, 157 W.Va. at 778, 204 S.E.2d at 86, Syl. Pt. 6 (emphasis added); *accord* Syl. Pt. 2, *Hamilton Watch Co. v. Atlas Container, Inc.*, 156 W.Va. 52, 190 S.E.2d 779 (1972) ("Inasmuch as courts favor the adjudication of cases on their merits, Rule 60(b) of the West Virginia Rules of Civil Procedure should be given a liberal construction."). Regarding the application of liberality that embraces Rule 60(b), we explained in *Hamilton Watch Co.*, that

> [t]he purpose of the rules of civil procedure is to permit not only a speedy determination of an adversary proceeding but, more importantly, a just determination. With this in mind it is understandable that provision has been made in the rules to correct a situation which, under certain circumstances, proves to be unjust.

156 W.Va. at 59, 190 S.E.2d at 783.

In determining whether a liberal construction of Rule 60(b), when juxtaposed with the harsh reality of Rule 77(d), warrants relief in this case, we find an examination of

federal courts that have determined this matter to be helpful. The federal versions of both

Rule 60 and Rule 77 are similar to our rules.[18] Succinctly stated, federal courts have found

that Rule 60(b) of the Rules of Civil Procedure can be used to set aside a judgment that was

not noticed to a party under Rule 77(d). *See Vencor Hosps., Inc. v. Standard Life and Acc.*

*Ins. Co.,* 279 F.3d 1306, 1310 (11th Cir. 2002) (stating that "[p]rior to 1991,[19] relief from

---

[18]In *Cattrell Companies, Inc. v. Carlton, Inc.*, 217 W. Va. 1, 614 S.E.2d 1 (2005) , we explained that

> "'[b]ecause the West Virginia Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure, we often refer to interpretations of the Federal Rules when discussing our own rules.' *See Painter v. Peavy*, 192 W.Va. 189, 192 n. 6, 451 S.E.2d 755, 758 n. 6 (1994) ("Because the West Virginia Rules of Civil Procedure are practically identical to the Federal Rules, we give substantial weight to federal cases . . . in determining the meaning and scope of our rules.")."

217 W. Va. at 8 n.21, 614 S.E.2d at 8 n.21 (quoting *Keplinger v. Va. Elec. & Power Co.*, 208 W.Va. 11, 20 n.13, 537 S.E.2d 632, 641 n.13 (2000)).

[19]In 1991, Federal Rule of Appellate Procedure 4(a) was amended to include subsection (6), which now provides:

> (6) Reopening the Time to File an Appeal. – The district court may reopen the time to file an appeal for a period of 14 days after the date when its order to reopen is entered, but only if all the following conditions are satisfied:
> (A) the court finds that the moving party did not receive notice under Federal Rule of Civil Procedure 77(d) of the entry of the judgment or order sought to be appealed within 21 days after entry;
> (B) the motion is filed within 180 days after the judgment or order is entered or within 14 days after the moving party receives notice of the entry under Federal Rule of Civil

(continued...)

16

judgment under Rule 60(b) was a recognized method of avoiding the otherwise harsh results imposed upon parties failing to receive actual notice of a judgment until after the time for appeal had passed. *See, e.g., Harnish v. Manatee County, Florida*, 783 F.2d 1535, 1538 (11th Cir.1986) ('By availing itself of the escape valve provided by Rule 60(b) of the Federal Rules of Civil Procedure in vacating and reentering its order on the Rule 59 motion, the court avoided the manifest injustice worked by a rigid application of the provisions of Rule 77(d) to the above-recited facts.').") (footnote added); *Wilson v. Atwood Grp.*, 725 F.2d 255, 257 (5th Cir. 1984) (recognizing that "[b]ecause of . . . the 'draconian effect' of rule 77(d), courts have sought to palliate its results by invoking rule 60(b). This rule states that the court may relieve a party from a judgment or order for any 'reason justifying relief from the operation of the judgment.'").

---

[19](...continued)
Procedure 77(d), whichever is earlier; and
(C) the court finds that no party would be prejudiced.

Fed. R. App. P. 4(a)(6). Since the adoption of Rule 4(a)(6), which provided a limited opportunity for relief in circumstances where the notice of entry of a judgment or order required by Rule 77(d) was not received or was not timely received, most federal courts have determined that Rule 4(a)(6) "provides the exclusive method for extending a party's time to appeal for failure to receive actual notice that a judgment or order has been entered[,]" and that Federal Rule of Civil Procedure 60(b) can no longer be used. *See Vencor Hosps.*, 279 F.3d at 1311. West Virginia has no counter-part similar to the Rule 4(a)(6) and, therefore, the viability of West Virginia Rule of Civil Procedure 60(b) for the purpose of reducing the harshness of Rule 77(d) remains intact.

17

Moreover, the majority of federal jurisdictions resolving this issue have required some diligence or special circumstances. *See Spika v. Vill. of Lombard, Ill.*, 763 F.2d 282, 285 (7th Cir. 1985) (stating that "[m]ost circuits allow Rule 60(b) relief to revive a lost right to appeal only where the appellant has exercised due diligence to ascertain whether the judgment has been entered or has given sufficient reason for the lack of such diligence."); *McKnight v. United States Steel* Corp., 726 F.2d 333, 335 (7th Cir. 1984) (finding that "[t]he extraordinary relief provided by Rule 60(b) may be granted only upon a showing of exceptional circumstances.")*; Rodgers v. Watt*, 722 F.2d 456, 461 (9th Cir.1983) (finding relief proper where diligence shown in checking status and docket sheet entries were erroneously out of sequence); *Hensley v. Chesapeake & Ohio Ry. Co.*, 651 F.2d 226, 230-31 (4th Cir.1981) (determining that court may rely on rule 60(b) to supersede Rule 77(d) under "unique circumstances."); *Buckeye Cellulose Corp. v. Braggs Elec. Constr.* Co., 569 F.2d 1036, 1038 (8th Cir.1978) (determining that three inquiries about status of the case and reliance on clerk's office statement that counsel would be notified sufficient for relief); *Expeditions Unlimited Aquatic Enters., Inc. v. Smithsonian Inst.*, 500 F.2d 808, 810 (D.C.Cir.1974) (holding that rule 60(b) permits district court to vacate and reenter judgment where neither party received timely notice and winning party was not prejudiced.).

In light of the foregoing, as the federal courts did prior to the adoption of Rule 4(a) of the Federal Rules of Appellate Procedure, we seek to ameliorate the draconian

effects of West Virginia Rule of Civil Procedure 77(d). We, therefore, hold that West Virginia Rule of Civil Procedure 60(b) may be used as a means to seek relief from a judgment or order that was not noticed to a party in accordance with West Virginia Rule of Civil Procedure Rule 77(d) upon a showing of diligence or exceptional circumstances by the aggrieved party. The requisite diligence or exceptional circumstances necessary for Rule 60(b) relief under these circumstances will require a case-by-case analysis.

In the instant case, the lack of notice of the final order that was entered granting summary judgment to the Plaintiffs is the result of error on the part of the circuit court.[20] The Plaintiffs set in motion the events that led to the lack of notice to Old Republic by failing to include the names of Old Republic's counsel on their proposed order submitted to the circuit court for consideration. This initial failure was compounded by the circuit court when it failed to change the style on the Plaintiffs' order from "proposed" to final, when it chose to enter the Plaintiffs' order as its final order resolving the matter. Moreover, unexplained in the record is why the circuit court gave the Plaintiffs' counsel a "courtesy" call informing him that the proposed order was going to be entered in the case, when no commensurate "courtesy" was extended to Old Republic. This is especially significant in light of the circuit court's finding that "[t]here [wa]s no question that Old Republic intended to appeal this order, should the Court rule in Mr. O'Neal's favor." Further, it is undisputed

---

[20]The circuit court and the circuit clerk had sent prior orders to Old Republic's counsel, including the order regarding the motion to amend the complaint.

19

that the circuit clerk failed to give any notice to Old Republic's counsel. Thus, when Old Republic's counsel saw that a proposed order had been docketed and called the circuit clerk's office about it, the circuit clerk correctly informed Old Republic's counsel that no final order had been entered, only a proposed order. Perhaps Old Republic's counsel should have requested a copy of the proposed order, but the failure to do so does not establish a lack of diligence given the misleading caption on the order and the evidence offered by Old Republic, which was not refuted, indicating that Old Republic's counsel continued to monitor the docket sheet for six months prior to finally inquiring of the circuit court and the Plaintiffs' counsel about the status of a final order. While the Plaintiffs, as well as the circuit court, are quick to place an affirmative duty upon Old Republic to confirm the content of an order that appeared on the circuit court's docket as a "proposed" order, they are equally quick to overlook their own negligence.

Consequently, under the unique facts of this case, we find that the circuit court abused its discretion in failing to afford Old Republic relief under West Virginia Rule of Civil Procedure 60(b) by vacating the January 27, 2014, proposed order and re-entering the same as the final order to allow Old Republic the opportunity to file an appeal.[21] The

---

[21]In light of our ruling, we also find that the circuit court erroneously determined that "Old Republic filed its Motion [referring to the Rule 60 motion] nearly eight months after the original order was entered and seven months after the missed deadline for filing a Notice of Appeal." Rather, the appendix record supports that Old Republic filed its Rule 60 motion within eight days of becoming aware that the January 27, 2014, "proposed" order was indeed
(continued...)

20

circumstances presented to the circuit court in this case were undeniably extraordinary and involved culpability on the part of all involved, including the circuit court. In light of our reversal on this issue, rather than remanding the case for the formality of re-entry of a final order granting the Plaintiffs summary judgment, in the interest of judicial economy, we proceed with consideration of the merits of the case as the substantive issue was fully briefed and argued by the parties.

## B. Subrogation Right

The substantive issue before the Court is whether the circuit court erred in granting the Plaintiffs summary judgment, by determining that Old Republic was not entitled to subrogation under the provisions of West Virginia Code § 23-2A-1. This particular argument can not be viewed with tunnel vision, focusing solely upon the relevant statute. Rather, the Court must explore each of the three avenues of recovery sought by the Plaintiffs in their complaint. The first is Mr. O'Neal's right to receive workers' compensation under Speed Mining's workers' compensation insurance policy issued by Old Republic. With this recovery comes the statutory right of subrogation in favor of Old Republic, as well as a contractual right of reimbursement in favor of Speed Mining. *See id.* The second avenue of recovery stems from the Plaintiffs' deliberate intention claim against

[21](...continued)
intended by the circuit court to be the final order in the case.

21

Speed Mining. This particular claim is not subject to any subrogation claim by Old Republic. The recovery received by the Plaintiffs from Speed Mining as a result of this claim, however, involves a settlement agreement entered into between these two parties, which impacts the resolution of this case. The final avenue of recovery arises from the Plaintiffs' products liability claim against the Baughan defendants. The Plaintiffs' settlement of this claim falls within the purview of Old Republic's statutory workers' compensation subrogation claim. Thus, we undertake an examination of the interplay of each of these avenues of recovery.

Looking first at Old Republic's statutory right of subrogation as set forth in West Virginia Code § 23-2A-1, Old Republic argues that the circuit court erred in the application of law, statute and contract when it extinguished Old Republic's statutory subrogation rights. Old Republic further argues that the circuit court erred in determining that "Speed Mining was a de-facto self-insured employer under the statute," that Old Republic waived any right to seek statutory subrogation, that Old Republic's subrogation rights were based on common law equitable principles, and that the statutory right could be modified, because the policy proceeds were provided by Speed Mining through the deductible, not from Old Republic's own funds.

Conversely, the Plaintiffs argue that Old Republic did not have a right of subrogation under West Virginia Code § 23-2A-1, because Patriot Coal, on behalf of Speed Mining, paid the worker's compensation benefits to the Plaintiff Mr. O'Neal and both Patriot and Speed Mining waived any claims to recover those benefits by the terms of the underlying settlement entered into between Speed Mining and the Plaintiffs in conjunction with the Plaintiffs' deliberate intention claim.

"A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).[22]  Further,

> "'[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).

*Painter*, 192 W. Va. at 190, 451 S.E.2d at 756, Syl. Pt. 2.

We begin with an examination of the statutory right of subrogation that is relied upon by Old Republic.  West Virginia Code § 23-2A-1 provides:

> (b) Notwithstanding the provisions of subsection (a) of this section, *if an injured worker, his or her dependents or his*

---

[22]Similarly, "[a] circuit court's entry of a declaratory judgment is reviewed *de novo*." Syl. Pt. 3, *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995).

23

*or her personal representative makes a claim against the third party*[23] *and recovers any sum for the claim:*

*(1) With respect to any claim arising from a right of action that arose or accrued, in whole or in part, on or after January 1, 2006, the private carrier or self-insured employer, whichever is applicable, shall be allowed statutory subrogation with regard to indemnity and medical benefits paid as of the date of the recovery.*

. . . .

(d) In the event that an injured worker, his or her dependents or personal representative makes a claim against a third party, *there shall be, and there is hereby created, a statutory subrogation lien upon the moneys received which shall exist in favor* of the Insurance Commissioner, *private carrier* or self-insured employer, whichever is applicable.

(e) *It is the duty of the injured worker, his or her dependents, his or her personal representative or his or her attorney to give reasonable notice to* the Insurance Commissioner, *private carrier* or self-insured employer *after a claim is filed against the third party and prior to the disbursement of any third-party recovery.* The statutory subrogation described in this section does not apply to uninsured and underinsured motorist coverage or any other insurance coverage purchased by the injured worker or on behalf of the injured worker. *If the injured worker obtains a recovery from a third party and the injured worker, personal representative or the injured worker's attorney fails to protect the statutory right of subrogation created herein, the injured worker, personal representative and the injured worker's attorney shall lose the right to retain attorney fees and costs out of the subrogation amount. In addition, such failure creates a cause of action for the Insurance Commissioner, private carrier or self-insured employer, whichever is applicable,*

---

[23]In the context of the this statute, third party refers to a party that is outside the employment relationship. Thus, in instant case, the Baughan defendants are the third parties against whom the Plaintiffs asserted a products liability claim.

24

*against the injured worker, personal representative and the injured worker's attorney for the amount of the full subrogation amount and the reasonable fees and costs associated with any such cause of action.*

*Id.* (emphasis and footnote added). Further, Old Republic also relies upon the following contractual language set forth in its insurance policy concerning its workers' compensation coverage provided to Speed Mining. The policy provides:

> We have your rights and the rights of persons entitled to the benefits of this insurance to recover all advances and payments, including those within the Deductible Amounts from any liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them. If we recover any advance or payment made under this policy from anyone liable for the injury, the amount we recover will first be applied to any payments made by us on this injury in excess of the Deductible Amount(s); only then will the remainder of the recovery, in any, be applied to reduce the Deductible Amount(s) paid or reimbursed or reimbursable by you on this injury.

From an examination of the record and the applicable law, we find the circuit court erred in its determination that the provisions of West Virginia Code § 23-2A-1(b) did not apply in this case because "Speed Mining was a de-facto self-insured employer under the statute, given the fact that its injured employee's workers' compensation benefits were actually paid by its parent corporation, Patriot Coal, who was self-insured." Other than a couple of early communications, one from Speed Mining's attorney, and one from Avizent, referring to the $2,000,000 deductible as Speed Mining's "self-insured retention" the record

25

is devoid of any evidence that supports the circuit court's determination of Speed Mining's status as being a "de-facto self-insured." The circuit court's finding also is in direct conflict with another finding made by the court that on the date of Mr. O'Neal's accident, "his employer, Speed Mining, was a named insured on a workers' compensation policy that had previously been issue[d] to Magnum Coal Company by Third party Defendant Old Republic Insurance Company. The aforementioned policy with Old Republic included a $2 million deductible."[24] Because Old Republic provided workers' compensation insurance coverage to Speed Mining as evinced by the employer being a named insured on the Old Republic policy, Old Republic qualified as a "private insurer"[25] under the provisions of West Virginia Code 23-2A-1(b). Thus, Old Republic fell within the purview of the statute providing an insurer a right of subrogation with regard to indemnity and medical benefits paid as of the date of the recovery as result of an injured worker's claim against a third party. *See id.*

Despite the erroneous ruling by the circuit court on the foregoing issue, we determine that it made the right ruling in this case, but based upon incorrect reasoning. As

---

[24]The circuit court's finding of "de-facto self-insured" is also unsupported by the law. *See* W. Va. Code § 23-2-9 (2010) (setting forth conditions that must be met in order for an employer to be considered self-insured). There is no evidence in the record that establishes that Speed Mining complied with the procedure established in this statute so as to qualify as a self-insured employer or even a "de-facto self-insured" employer.

[25]"Private carrier" is defined in West Virginia Code § 23-2C-2(n) (2010) to mean "any insurer or the legal representative of an insurer authorized by the Insurance Commissioner to provide workers' compensation insurance pursuant to this chapter."

26

we have explained, this Court is not bound by the incorrect reasoning relied upon by a lower court:

> We have consistently held that "[t]his Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. Pt. 3, *Barnett v. Wolfolk*, 149 W.Va. 246, 140 S.E.2d 466 (1965); *see also Cumberland Chevrolet Oldsmobile Cadillac, Inc. v. General Motors Corp.*, 187 W.Va. 535, 538, 420 S.E.2d 295, 298 n. 4 (1992)(stating that "even if the reasoning of a trial court is in error . . . we are not bound by a trial court's erroneous reasoning"); *State ex rel. Dandy v. Thompson*, 148 W.Va. 263, 274, 134 S.E.2d 730, 737, *cert. denied*, 379 U.S. 819, 85 S.Ct. 39, 13 L.Ed.2d 30 (1964)(stating in criminal context that "correctness of ... [trial court's] final action is the only material consideration, not the stated reasons for [the trial court's] taking such action").

*State v. Boggess*, 204 W. Va. 267, 276, 512 S.E.2d 189, 198 (1998).

Thus, we now examine other grounds relied upon by the circuit court in its decision to grant the Plaintiffs summary judgment. The circuit court also found the settlement entered into between Speed Mining and the Plaintiffs foreclosed the statutory right of subrogation as "the terms of the settlement *did not* expressly preserve Speed Mining's right to be reimbursed for workers compensation benefits paid to Mr. O'Neal should he recover monies from third-parties," such as Baughan defendants. It is the language contained within this settlement agreement that is the Achilles' heal of Old Republic's argument that it is entitled to statutory subrogation.

27

When Speed Mining settled the Plaintiffs' deliberate intention action, the settlement agreement, dated October 13, 2011, provided: "It is FURTHER SPECIFICALLY UNDERSTOOD, ACKNOWLEDGED AND AGREED by the parties that this Agreement is the entire agreement and encompasses all terms and agreements negotiated by them *in settlement of any and all claims relating to the Subject Incident* and that there is no other writings whatsoever." (Emphasis added).

At the time of the foregoing settlement, Speed Mining, in its own right, had a contractual claim of reimbursement under Old Republic's insurance policy for the $1,845,197.13 that Speed Mining had paid as its deductible as a result of the Plaintiff Mr. O'Neal's workers' compensation claim. As Beverly Sellers, Old Republic's representative testified during her deposition, "[t]he policy language dictates what happens to any recovery." According to Ms. Sellers, Old Republic would keep any amount over the deductible and any other amount would be reimbursed to Speed Mining. Consequently, when Speed Mining settled the deliberate intention claim with the Plaintiffs, it agreed that the settlement was for "any and all claims relating to the Subject Incident[,]" i.e., the accident that caused Mr. O'Neal's injuries. Thus, Speed Mining relinquished its right of reimbursement of any money it had expended in payment of the deductible amounts of Mr. O'Neal's workers' compensation claim from the settlement the Plaintiffs entered into with the Baughan defendants regarding their products liability claim.

28

The consequence of Speed Mining's action are that when Old Republic sought to invoke its statutory right of subrogation under the provisions of West Virginia Code § 23-2A-1(b) relating to the settlement that the Plaintiffs entered into with the Baughan defendants regarding the products liability claim, Old Republic sought subrogation of the $1,845,197.13,[26] which was the amount of money that had been paid by Speed Mining,[27] not Old Republic, under the subject workers' compensation insurance policy at the time of the products liability settlement. As previously mentioned, Speed Mining relinquished its claim of reimbursement as part of the negotiated settlement regarding the deliberate intention claim entered into between it and the Plaintiffs. Had Old Republic paid any money relative

---

[26]To the extent that Old Republic argues in its brief that "[a]s of December 13, 2013, three days before the hearing below [referring to the summary judgment hearing], . . . [Old Republic] had already paid $239,454.65 over the deductible, and had conservatively reserved $6,565,914.35 in benefits payments for this claim[,]" this information is nothing more than a red herring. Old Republic was only entitled to seek subrogation for money paid as of the date of recovery by the Plaintiffs from the third party. In this case, the date of recovery was the date the Plaintiffs settled their products liability claim with the Baughan Defendants and the record establishes that on that date, the workers' compensation benefits that had been paid remained within the $2,000,000 deductible.

[27]Old Republic relied upon *Argonaut Insurance Co. v. Baker*, 87 S.W.3d 526 (Tex. 2002), to support its position that it is entitled to recover the deductible amount paid by its insured in this case. A close examination of the *Argonaut* decision, however, reveals that the decision fails to support Old Republic's argument. The insurance company paid the deductible in that case under the deductible plan the employer had in place. Thus, the Supreme Court of Texas held the insurer "must be reimbursed from the settlement proceeds for the benefits it has paid to and on behalf of . . . [the injured worker], including those paid from the deductible[,]" because the insurer had actually paid the deductible amount. *Id*. at 531-32. In this case, as the circuit court found, Old Republic had not pay any workers' compensation benefits to the Plaintiffs at the time they recovered from the Baughan defendants.

29

to indemnity or medical benefits under the Old Republic workers' compensation insurance policy, Old Republic certainly would have had a statutory right of subrogation. The only claim that was waived, therefore, was Speed Mining's claim for reimbursement.

As we recognized in syllabus point two of *Bush v. Richardson*, 199 W. Va. 374, 484 S.E.2d 490 (1997),

> "'[t]he doctrine of subrogation is that one who has the right to pay, and does pay, a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed against that other.' Syl. Pt. 1, *Bassett v. Streight*, 78 W.Va. 262, 88 S.E. 848 (1916)." Syl. pt. 4, *Ray v. Donohew*, 177 W.Va. 441, 352 S.E.2d 729 (1986).

Furthermore, we held: "'The right of subrogation depends upon the facts and circumstances of each particular case. *Huggins v. Fitzpatrick*, 102 W.Va. 224, 228, 135 S.E. 19, 20 (1926).' Syl. pt. 3, *Ray v. Donohew*, 177 W.Va. 441, 352 S.E.2d 729 (1986)." *Bush*, 199 W. Va. at 375, 484 S.E.2d at 491, Syl. Pt. 3. In reaching these two holdings, even though we accepted the differences between statutory and equitable subrogation,[28] we acknowledged that "[t]he doctrine of subrogation originated from equity rather than out of statute or common law . . . ." *Id*. at 377-38, 484 S.E.2d at 493-94. We further stated that

---

[28]We reject Old Republic's arguments that the circuit court "applied principles of equitable subrogation to extinguish" or modify its statutory right of subrogation. Rather, a plain reading of the circuit court's order reveals that the circuit court historically recognized that the concept of subrogation is derived from equity, not statute, and that at its essence, even statutory subrogation involves "a person who, in fact, paid the debts owed by another[.]"

"[t]he purpose of subrogation is 'to compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it.' 83 C.J.S. *Subrogation* § 2 at 582 (1953) (footnote omitted)." *Bush*, 199 W. Va. at 378, 484 S.E.2d at 494.

Consequently, under the unique facts of this case, Old Republic is attempting to recover money that it never paid and that its insured is not entitled to receive. If this Court were to allow Old Republic to exercise the statutory right of subrogation in this matter, Old Republic would receive a windfall insofar as it would receive monies it never expended.[29] Moreover, under such a scenario, Old Republic's insured, Speed Mining,

---

[29]We decline to hold that a deductible amount paid under a workers' compensation policy may never be recovered by a private insurer under the provisions of West Virginia Code § 23-2A-1. There may be instances either where a private insurer pays the deductible under the terms of the policy or where the private insurer contractually asserts a subrogation lien for money paid under the policy, which may include a deductible amount paid by the insured, but where the insured has not released its reimbursement or subrogation claim. In these instances, the terms of the insurance policy will more than likely govern the manner in which either the insured reimburses the insurer or the insurer reimburses its insured.

We further note that under the contractual language of Old Republic's policy in this case, the insured, Speed Mining, was contractually obligated to "do everything necessary to protect" Old Republic's contractual rights "to recover all advances and payments, including those within the Deductible Amount(s) from anyone liable for the injury." According to the terms of the policy,

> [i]f we [referring to Old Republic] recover any advance or payment under this policy from anyone liable for the injury, the amount we recover will first be applied to any payments made by us on this injury in excess of the Deductible Amount(s); only then will the remainder of the recovery, if any, be applied to reduce the Deductible Amount(s) paid or reimbursed or

(continued...)

31

would be allowed to circumvent its settlement of the deliberate intention claim entered into with the Plaintiffs, as Speed Mining gave up any claim of reimbursement as part of the terms of the settlement of that claim.

## IV. Conclusion

Based upon the foregoing, we reverse the circuit court's denial of Old Republic's Rule 60(b) motion for relief from judgment. In the interest of judicial economy, deciding to forego remand for entry of an order granting Old Republic's relief requested for purposes of pursuing an appeal, we proceed with a review of the substantive issue. We affirm the circuit court's order granting the Plaintiffs' motion for summary judgment.

Reversed, in part;
Affirmed, in part.

---

[29](...continued)
reimbursable by you [Speed Mining] on this injury.

Arguably, under the foregoing contractual language, Old Republic may have a basis for asserting that Speed Mining breached the terms of the insurance policy; however, it is uncertain as to how it can be established that Speed Mining failed to protect Old Republic's contractual rights given Old Republic had not expended any money pursuant to the insurance policy at the time of the settlement. Moreover, as Speed Mining was not a party to this portion of the litigation below and is not a party to this appeal, we find no basis for resolving this issue.

32